UNITED STATES ET AL. *v.* SMITH ET AL.

No. 89–1646.   Argued November 7, 1990—Decided March 20, 1991

MARSHALL, J., delivered the opinion of the Court, in which REHN-QUIST, C. J., and WHITE, BLACKMUN, O'CONNOR, SCALIA, KENNEDY, and SOUTER, JJ., joined. STEVENS, J., filed a dissenting opinion, *post*, p. 175.

*Deputy Solicitor General Shapiro* argued the cause for the United States. With him on the briefs were *Solicitor General Starr, Assistant Attorney General Gerson, Stephen L. Nightingale, Barbara L. Herwig*, and *John F. Daly*.

*Walter A. Oleniewski* argued the cause for respondents. With him on the brief was *Ashley Joel Gardner*.

JUSTICE MARSHALL delivered the opinion of the Court.

The Federal Employees Liability Reform and Tort Compensation Act of 1988 (Liability Reform Act or Act) limits the relief available to persons injured by Government employees acting within the scope of their employment. For persons so injured, the Act provides that "[t]he remedy against the

United States" under the Federal Tort Claims Act (FTCA) "is exclusive of any other civil action or proceeding for money damages." 28 U. S. C. § 2679(b)(1). Subject to certain exceptions, the FTCA permits a person injured by a Government employee acting within the scope of his or her employment to seek tort damages against the Government. One exception bars such recovery for injuries sustained outside the country. See 28 U. S. C. § 2680(k). This case presents the question whether a person injured abroad by a military physician, and whom the FTCA foreign-country exception therefore precludes from suing the Government, may nonetheless seek damages from the particular Government employee who caused the injury. We hold that the Liability Reform Act bars this alternative mode of recovery.

## I

In 1982, while working on the medical staff of the United States Army hospital in Vicenza, Italy, Dr. William Marshall served as attending physician to Hildegard Smith during the delivery of her son Dominique. At this time, Ms. Smith's husband, Marcus Smith, was an Army Sergeant stationed in Italy. According to the Smiths, Dominique was born with massive brain damage. In 1987, the Smiths, who are respondents in this Court, sued Dr. Marshall in the United States District Court for the Central District of California, basing jurisdiction on diversity of citizenship. The Smiths alleged that Dr. Marshall's negligence during the delivery caused Dominique's injuries.[1]

The Government intervened and sought to have itself substituted for Dr. Marshall as the defendant pursuant to the Gonzalez Act, 10 U. S. C. § 1089. The Gonzalez Act provides that in suits against military medical personnel for torts committed within the scope of their employment, the Government is to be substituted as the defendant and the suit is to

---

[1] Respondents brought their claim under California law, Italian law, and "general American principles of law." See Complaint ¶ 19.

proceed against the Government under the FTCA. See §§ 1089(a), (b). The Government also argued that, because the action arose overseas, the FTCA exception excluding recovery for injuries sustained abroad, 28 U. S. C. § 2680(k), precluded Government liability. Consequently, the Government concluded, the action should be dismissed. The District Court granted the Government's motion for substitution and dismissed the action. See App. to Pet. for Cert. 17a–18a.[2]

In 1988, while respondents' appeal was pending, Congress enacted the Liability Reform Act as an amendment to the FTCA. Congress took this action in response to our ruling in *Westfall* v. *Erwin*, 484 U. S. 292 (1988), which held that the judicially created doctrine of official immunity does not provide absolute immunity to Government employees for torts committed in the scope of their employment. In *Westfall*, we ruled that such official immunity would have to be determined on a case-by-case basis, according to whether "the contribution to effective government in particular contexts" from granting immunity "outweighs the potential harm to individual citizens." 484 U. S., at 299. The Liability Reform Act establishes the absolute immunity for Government employees that the Court declined to recognize under the common law in *Westfall*. The Act confers such immunity by making an FTCA action against the Government the exclusive remedy for torts committed by Government employees in the scope of their employment.[3]

---

[2] As an alternative ground for dismissal, the District Court cited respondents' failure to present their claim to the appropriate federal agency within the time required under 28 U. S. C. § 2401(b). See App. to Pet. for Cert. 17a–18a.

[3] Section 5 of the Act provides:

"The remedy against the United States provided by [the FTCA] for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of

On appeal in the present case, the Government relied on this new statute to support the District Court's dismissal of respondents' action.[4]   The Government argued that the Liability Reform Act essentially had the same effect as that which the District Court had found to result from the Gonzalez Act.   Because Dr. Marshall's alleged malpractice occurred in the scope of his employment, the Government argued, respondents' action should proceed against it as an FTCA action.[5]   The Government further contended that, because of the FTCA exception under § 2680(k) barring recovery for injuries occurring overseas, the District Court's ruling dismissing the suit should be affirmed.

The Ninth Circuit reversed, holding that neither the Gonzalez Act nor the Liability Reform Act required substitution of the Government as the defendant in this suit or otherwise immunized Dr. Marshall from liability.   See 885 F. 2d 650 (1989).[6]   With respect to the Liability Reform Act, the

---

the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee.   Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred." 28 U. S. C. § 2679(b)(1).

[4] Pursuant to § 8(b), the Liability Reform Act applies to all proceedings pending on the date of its enactment.   102 Stat. 4565–4566, note following 28 U. S. C. § 2679.   Respondents do not dispute that the Act applies in this case.

[5] Under § 6 of the Liability Reform Act, the Attorney General is required to certify that the original defendant (the Government employee) "was acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U. S. C. § 2679(d)(1).   Once certification occurs, the action "shall be deemed an action against the United States [under the FTCA] and the United States shall be substituted as the party defendant." *Ibid.*   Where the Attorney General refuses to issue such certification, the Act permits the employee to seek a judicial determination that he was acting within the scope of his employment. § 2679(d)(3).

[6] Following the Liability Reform Act's enactment and the Eleventh Circuit's decision in *Newman* v. *Soballe*, 871 F. 2d 969 (1989), the Government

Ninth Circuit reasoned that although the Act renders a suit against the Government under the FTCA the exclusive remedy for employment-related torts committed by Government employees, the Act applies only when the FTCA in fact provides a remedy. Because § 2680(k) of the FTCA precludes any remedy against the Government in cases arising from injuries incurred abroad, the Ninth Circuit concluded that respondents' tort claim against Dr. Marshall was not barred by the Liability Reform Act. *Id.*, at 654–655.

We granted certiorari, 496 U. S. 924 (1990), to resolve a conflict among the Circuits over whether the Liability Reform Act immunizes Government employees from suit even when an FTCA exception precludes recovery against the Government.[7] We conclude the Act does confer such immunity and therefore reverse.

## II

Section 5 of the Liability Reform Act states that "[t]he remedy" against the Government under the FTCA "is exclu-

---

withdrew reliance on the Gonzalez Act as a basis for affirming the District Court's ruling. However, Dr. Marshall, appearing *pro se,* requested the Ninth Circuit to address the applicability of the Gonzalez Act. See Brief for United States 5, n. 3. Following the rationale of *Newman* v. *Soballe, supra,* the Ninth Circuit held that the Gonzalez Act made the FTCA the exclusive remedy only for malpractice committed by stateside military medical personnel and that the Act left foreign-based military medical personnel like Dr. Marshall subject to malpractice liability. See 885 F. 2d, at 651–654. Because the Government did not raise the Gonzalez Act issue in its petition for certiorari, we need not address that portion of the lower court's ruling that denied Dr. Marshall immunity under the Gonzalez Act. In any event, that question is rendered irrelevant in this case by our holding that the Liability Reform Act confers Dr. Marshall immunity.

[7] The First, Fifth and Tenth Circuits all have held that the Liability Reform Act applies even when an FTCA exception precludes liability against the Government. See *Nasuti* v. *Scannell,* 906 F. 2d 802, 810, n. 14 (CA1 1990); *Mitchell* v. *Carlson,* 896 F. 2d 128 (CA5 1990); *Aviles* v. *Lutz,* 887 F. 2d 1046 (CA10 1989). The Eleventh Circuit has taken the opposite position. See *Newman* v. *Soballe, supra,* at 971.

sive of any other civil action or proceeding for money damages . . . against the employee" and then reemphasizes that "[a]ny other civil action or proceeding for money damages . . . against the employee . . . is precluded." 28 U. S. C. § 2679(b)(1). The central question in this case is whether, by designating the FTCA as the "exclusive remedy," § 5 precludes an alternative mode of recovery against a Government employee in cases where the FTCA itself does not provide a means of recovery.

Two provisions in the Liability Reform Act confirm that § 5 makes the FTCA the exclusive mode of recovery for the tort of a Government employee even when the FTCA itself precludes Government liability. The first is § 6 of the Act. As noted, see n. 5, *supra*, § 6 directs the Attorney General in appropriate tort cases to certify that a Government employee named as defendant was acting within the scope of his employment when he committed the alleged tort. Section 6 also provides that the suit "shall proceed in the same manner as any action against the United States filed pursuant to [the FTCA] and shall be subject to the *limitations and exceptions* applicable to those actions." 28 U. S. C. § 2679(d)(4) (emphasis added). One of these "exceptions"—expressly designated as such under § 2680—is the provision barring Government liability for torts "arising in a foreign country." § 2680(k). The "limitations and exceptions" language in § 6 of the Liability Reform Act persuades us that Congress recognized that the required substitution of the United States as the defendant in tort suits filed against Government employees would sometimes foreclose a tort plaintiff's recovery altogether.

The second basis of our interpretation arises from the express preservations of employee liability in § 5. Section 5 declares that the FTCA is *not* the exclusive remedy for torts committed by Government employees in the scope of their employment when an injured plaintiff brings: (1) a *Bivens* ac-

tion,[8] seeking damages for a constitutional violation by a Government employee; or (2) an action under a federal statute that authorizes recovery against a Government employee. See § 2679(b)(2). Congress' express creation of these two exceptions convinces us that the Ninth Circuit erred in inferring a third exception that would preserve tort liability for Government employees when a suit is barred under the FTCA. "Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Andrus* v. *Glover Construction Co.*, 446 U. S. 608, 616–617 (1980).[9]

---

[8] See *Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U. S. 388 (1971).

[9] The legislative history fully supports our construction. In particular, the House Committee Report provides:

"The 'exclusive remedy' provision . . . is intended to substitute the United States as the solely permissible defendant in all common law tort actions against Federal employees who acted in the scope of employment. Therefore, suits against Federal employees are precluded even where the United States has a defense which prevents actual recovery. Thus, *any claim against the government that is precluded by the exceptions set forth in Section 2680 of Title 28, U. S. C.[,] also is precluded against an employee* in his or her estate." H. R. Rep. No. 100–700, p. 6 (1988) (emphasis added).

The Ninth Circuit deemed the Report "internally inconsistent," 885 F. 2d, at 656, because of other language in the Report stating that "[u]nder [the Liability Reform Act], no one who previously had the right to initiate a lawsuit will lose that right," H. R. Rep., *supra*, at 7. The Ninth Circuit understood this passage to suggest that Congress did not intend to narrow existing rights of recovery. However, this language must be read in conjunction with a preceding sentence in the Report, which states that the Act "contains provisions to ensure that no one is unfairly affected by [the Act's] procedural ramifications" and that, where "an injury has occurred before [the Act] is enacted, but no lawsuit has yet been filed . . . , the claimant will have to pursue a remedy against the United States, not against the employee." *Ibid.* When read in context, the passage relied on by the Ninth Circuit indicates that those with existing lawsuits would be permitted to continue to prosecute them by substituting the Government for the employee. The passage supports only the conclusion that the Liability

The Ninth Circuit based its contrary construction of the Liability Reform Act on one of the Act's specialized provisions. Section 9 of the Act provides that the Tennessee Valley Authority (TVA) shall be substituted as defendant in any suit against a TVA employee arising from "act[ions] within the scope of his office or employment," 16 U. S. C. § 831c–2(b)(1), and that an action against the TVA is "ex[c]lusive of any other civil action or proceeding," 16 U. S. C. § 831c–2(a)(1). Under the TVA exception to the FTCA, 28 U. S. C. § 2680(*l*), the Government may not be held liable for any claim arising from the TVA's activities. The Ninth Circuit inferred from the enactment of § 9 that Congress must have expected that § 5 would *not* shield TVA employees from liability where suit against the United States was precluded by § 2680(*l*). See 885 F. 2d, at 655. And because only TVA employees were singled out for a special grant of immunity, the court concluded that all other Government employees must remain subject to liability where the FTCA precludes suit against the United States. See *ibid.*

The Ninth Circuit's analysis rests on a misunderstanding of the purpose and effect of § 9. By its terms, § 9 does not invest TVA employees with more immunity than § 5 affords other Government employees. Rather, § 9 provides merely that a suit against *the TVA*, 16 U. S. C. § 831c–2(a)(1), rather than one against *the United States*, 28 U. S. C. § 2679(b)(1), shall be the exclusive remedy for the employment-related torts of TVA employees. This adjustment of the Liability Reform Act's immunity scheme is perfectly sensible, for although the United States may not be held liable for the TVA's activities, the TVA itself "[m]ay sue and be sued in its corporate name." 16 U. S. C. § 831c(b). Courts have read this "sue or be sued" clause as making the TVA liable to suit

Reform Act preserved the *procedural* right to initiate an action. It does not suggest that the Act did not narrow existing *substantive* rights of recovery.

in tort, subject to certain exceptions. See, *e. g., Peoples Nat. Bank of Huntsville, Ala.* v. *Meredith,* 812 F. 2d 682, 684–685 (CA11 1987); *Queen* v. *Tennessee Valley Authority,* 689 F. 2d 80, 85 (CA6 1982), cert. denied, 460 U. S. 1082 (1983). In our view, the most plausible explanation for § 9 is that, in view of lower court cases establishing the TVA's own tort liability independent of the FTCA, Congress decided to clarify that the TVA should be substituted in suits brought against TVA employees.

Seen in this light, the enactment of § 9 supports no inference either way on the scope of § 5 immunity when suit against the United States is precluded under the FTCA. Both the plain language and legislative history of § 9 indicate that the provision was intended to give TVA employees the *same* degree of immunity as § 5 gives other Government employees. Compare 28 U. S. C. § 2679(b)(1), with 16 U. S. C. § 831c–2(a)(1). See also 134 Cong. Rec. 31054 (1988) (remarks of Sen. Heflin). But because the scope of immunity conferred to employees is the same, § 9 has no bearing upon whether Congress viewed § 5 as protecting Government employees from liability when suit against the United States is precluded under the FTCA.[10]

### III

### A

In support of the decision below, respondents advance reasoning not relied upon by the Ninth Circuit. They invoke the well-established principle of statutory interpretation that implied repeals should be avoided. See, *e. g., Randall* v.

---

[10] We note, moreover, that Congress included within § 9 a provision parallel to that under § 5 preserving employee liability for *Bivens* actions. See 16 U. S. C. § 831c–2(a)(2). Likewise, § 9 contains language parallel to the "limitations and exceptions" language within § 6. See 16 U. S. C. § 831c–2(b)(4) (indicating that action against TVA under § 9 "shall be subject to the limitations and exceptions applicable to" actions against the TVA generally).

*Loftsgaarden*, 478 U. S. 647, 661 (1986) ("'repeals by implication are not favored'" (citations omitted)). Respondents contend that the Government's construction of the Liability Reform Act precluding tort liability for Dr. Marshall results in an implied repeal of the Gonzalez Act, 10 U. S. C. § 1089, which regulates suits against military medical personnel. We disagree.

The Gonzalez Act is one of a series of immunity statutes enacted prior to the Liability Reform Act that were designed to protect certain classes of Government employees from the threat of personal liability.[11] For torts committed by military medical personnel within the scope of their employment, the Gonzalez Act provides that a suit against the Government under the FTCA is the exclusive remedy. 10 U. S. C. § 1089(a).[12]

---

[11] The Gonzalez Act was passed in response to the decision in *Henderson* v. *Bluemink*, 167 U. S. App. D. C. 161, 511 F. 2d 399 (1974), which held that an Army physician did not have absolute immunity from suit for alleged malpractice committed within the scope of his employment. See S. Rep. No. 94–1264, p. 4 (1976). Similar pre-immunity statutes were enacted for other medical personnel employed by the Government, including those in the State Department, see 22 U. S. C. § 2702, the Veterans' Administration, see 38 U. S. C. § 4116, and the Public Health Service, see 42 U. S. C. § 233. Another immunity statute was enacted to shield Defense Department attorneys from claims of legal malpractice. See 10 U. S. C. § 1054. Finally, before it was expressly repealed by the superseding provisions of the Liability Reform Act, the Federal Drivers Act, 28 U. S. C. § 2679(b)–(e) (1982 ed.), made the FTCA the exclusive remedy for torts committed by Government employees while operating a motor vehicle within the scope of their employment.

[12] Section 1089(a) provides:

"The remedy against the United States provided by [the FTCA] for damages for personal injury, including death, caused by the negligent or wrongful act or omission of any physician, dentist, nurse, pharmacist, or paramedical or other supporting personnel . . . of the armed forces . . . while acting within the scope of his duties or employment . . . shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against such physician, dentist, nurse, pharmacist, or

Two Courts of Appeals, including the Ninth Circuit in the decision below, have held that the Gonzalez Act's grant of absolute immunity from suit protects only military medical personnel who commit torts within the United States and not those committing torts abroad. See 885 F. 2d, at 652–654; *Newman* v. *Soballe*, 871 F. 2d 969 (CA11 1989). In reaching this conclusion, these courts relied largely on § 1089(f) of Title 10, which permits agency heads to indemnify or insure foreign-based military medical personnel against liability for torts committed abroad while in the scope of their employment.[13] The Ninth and Eleventh Circuits construe § 1089(f) to limit the protection available to foreign-based military medical personnel to indemnification or insurance, instead of the immunity that is otherwise available to them when stationed within the United States.[14] Under this interpretation, the Gonzalez Act would not preclude respondents from suing Dr. Marshall directly in a United States court. Respondents contend that extending the Liability Reform Act to foreign-based military medical personnel therefore would effect an implied repeal of their "Gonzalez Act remedy." See Brief for Respondents 8, 33, 46.

---

paramedical or other supporting personnel (or the estate of such person) whose act or omission gave rise to such action or proceeding."

[13] Section 1089(f) provides:

"The head of the agency concerned may, to the extent that the head of the agency concerned considers appropriate, hold harmless or provide liability insurance for any person described in subsection (a) for damages for personal injury, including death, caused by such person's negligent or wrongful act or omission in the performance of medical, dental, or related health care functions (including clinical studies and investigations) while acting within the scope of such person's duties if such person is assigned to a foreign country . . . ."

[14] See also *Jackson* v. *Kelly*, 557 F. 2d 735, 740–741 (CA10 1977) (endorsing this view in dictum). But cf. *Powers* v. *Schultz*, 821 F. 2d 295 (CA5 1987) (reasoning that § 1089(f)'s indemnify-or-insure language applies only when foreign-based personnel are sued in foreign courts and that such personnel remain immune from suit in a United States court).

We reject the last step in respondents' argument. For purposes of this case, we need not question the lower court's determination that the Gonzalez Act would not immunize Dr. Marshall from a malpractice action brought under state or foreign law. Even if the lower court properly interpreted the Gonzalez Act, it does not follow, however, that application of the Liability Reform Act to an action founded on state or foreign law effects a "repeal" of the Gonzalez Act. The Gonzalez Act functions solely to protect military medical personnel from malpractice liability; it does not create rights in favor of malpractice plaintiffs. What respondents describe as their "Gonzalez Act remedy" is in fact a state- or foreign-law remedy that would not be foreclosed by Gonzalez Act immunity. Consequently, the rule disfavoring implied repeals simply is not implicated by the facts of this case, because the Liability Reform Act does not repeal anything *enacted* by the Gonzalez Act. The Liability Reform Act *adds* to what Congress created in the Gonzalez Act, namely protection from liability for military doctors. Respondents' rights, on the other hand, arise solely out of state or foreign law. Because Congress did not create respondents' rights, no implied repeal problem arises when Congress limits those rights.[15]

## B

Respondents next raise a second and slightly different argument involving the Gonzalez Act. They contend that the Liability Reform Act was meant to apply solely to those Government employees not already protected from tort liability in some fashion by a pre-existing federal immunity

---

[15] The dissent contends that we have rendered "virtually meaningless" the insure-or-indemnify clause of § 1089(f) of the Gonzalez Act by holding that the Liability Reform Act bars any malpractice action in state or federal court against a foreign-based military physician. See *post*, at 176–177. This is not true. In the wake of the Liability Reform Act, insurance or indemnification against malpractice suits in *domestic* courts is no longer needed, but § 1089(f) still serves to protect foreign-based military personnel against malpractice suits in *foreign* courts. See *Powers* v. *Schultz*, 821 F. 2d, at 297.

statute. Under respondents' construction of the Act, military medical personnel and other Government employees who were already protected by other statutes, see n. 11, *supra*, cannot now benefit from the more generous immunity available under the Liability Reform Act. In our view, such a construction is inconsistent with Congress' purpose in enacting the Liability Reform Act.

The Liability Reform Act's plain language makes no distinction between employees who are covered under pre-Act immunity statutes and those who are not. Section 5 states that, with respect to a tort committed by "*any* employee of the Government" within the scope of employment, the FTCA provides the exclusive remedy. See 28 U. S. C. § 2679(b)(1) (emphasis added). No language in § 5 or elsewhere in the statute purports to restrict the phrases "any employee of the Government," as respondents urge, to reach only employees not protected from liability by another statute. When Congress wanted to limit the scope of immunity available under the Liability Reform Act, it did so expressly, as it did in preserving employee liability for *Bivens* actions and for actions brought under a federal statute authorizing recovery against the individual employee. § 2679(b)(2); see also *supra*, at 166–167. In drafting the Liability Reform Act, Congress clearly was aware of the pre-Act immunity statutes. See H. R. Rep. 100–700, p. 4 (1988) (citing these statutes, including the Gonzalez Act). We must conclude that if Congress had intended to limit the protection under the Act to employees not covered under the pre-Act statutes, it would have said as much.[16]

C

Finally, respondents argue that their claim falls within one of the two express exceptions under the Liability Reform

---

[16] The House Committee Report echoes the all-encompassing language of the statute: "The 'exclusive remedy' provision . . . is intended to substitute the United States as the solely permissible defendant in *all* common law tort actions against Federal employees who acted in the scope of employment." H. R. Rep. No. 100–700, at 6 (emphasis added).

Act—the exception permitting suits "brought for a violation of a statute of the United States under which such action against an individual [employee] is otherwise authorized." § 2679(b)(2)(B). Respondents assert that they have satisfied both conditions set forth in this exception. They contend that (1) their claim against Dr. Marshall is "authorized" by the Gonzalez Act and that (2) because the Gonzalez Act permits suits against military doctors for negligence in certain instances, such claims of negligence constitute claims of a Gonzalez Act "violation." We need not decide whether a tort claim brought under state or foreign law could be deemed authorized by the Gonzalez Act, for we find that respondents' second argument—that a claim for malpractice involves "a violation of" the Gonzalez Act—is without merit. Nothing in the Gonzalez Act imposes any obligations or duties of care upon military physicians. Consequently, a physician allegedly committing malpractice under state or foreign law does not "violate" the Gonzalez Act.

The dissent disagrees. According to the dissent, unless § 2679(b)(2)(B) "was intended to preserve the Gonzalez Act remedy, it was essentially without purpose." *Post*, at 183. However, the dissent never attempts to square this assertion with the plain language of § 2679(b)(2)(B), which permits only those suits against Government employees "brought for a *violation of a statute of the United States* under which such action against an [employee] is otherwise authorized" (emphasis added). At no point does the dissent indicate how a military physician's malpractice under state or foreign law could be deemed a "violation" of the Gonzalez Act. Nor can the dissent avoid this obstacle merely by invoking the canon of statutory construction that every provision of a law should be given meaning. See *post*, at 183, and n. 8. It is true that the legislative history fails to disclose (and neither we nor the dissent has attempted to discover) what cause(s) of action Congress sought to preserve when it enacted § 2679(b)(2)(B), but a malpractice suit alleging a "violation" of the Gonzalez

Act cannot have been one of them. The Gonzalez Act simply does not impose any duties of care upon military physicians that could be violated.

The dissent resists this conclusion because it is impressed by "Congress' general intent, expressed throughout the hearings and in the House Report, that [the Liability Reform Act] not curtail any pre-existing remedies of tort victims." *Post,* at 183. The truth is, however, that the legislative history reveals considerably less solicitude for tort plaintiffs' rights than the dissent suggests. As we have already noted, see n. 9, *supra,* the House Report expressly warned that, under the Liability Reform Act, "*any* claim against the government that is precluded by [FTCA] exceptions"—which obviously would include claims barred by the exception for causes of action arising abroad—"also is precluded against an employee." H. R. Rep. 100–700, at 6 (emphasis added). This congressional intent was clearly implemented in § 5 of the Act, and we are obliged to give it effect.

## IV

For the reasons set forth above, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

JUSTICE STEVENS, dissenting.

The Department of Defense (Department) provides medical and dental care for families of service personnel stationed abroad. Subsection (f) of the Gonzalez Act authorizes the Department to indemnify its health care personnel serving overseas in the event that they are sued for malpractice.[1]

---

[1] The Gonzalez Act, also known as the Medical Malpractice Immunity Act, authorizes indemnification as follows:

"(f) The head of the agency concerned or his designee may, to the extent that he or his designee deems appropriate, hold harmless or provide liability insurance for any person described in subsection (a) for damages for personal injury, including death, caused by such person's negligent or

Regulations issued pursuant to subsection (f) make the United States the real party in interest in such a tort action.[2] The regulations provide victims of malpractice with a remedy against the United States, even in cases in which the nominal, individual defendant may have no assets.

This Gonzalez Act remedy protects both doctors and patients involved in malpractice claims arising out of the performance of health care services for American military

---

wrongful act or omission in the performance of medical, dental, or related health care functions (including clinical studies and investigations) while acting within the scope of such person's duties if such person is assigned to a foreign country or detailed for service with other than a Federal department, agency, or instrumentality or if the circumstances are such as are likely to preclude the remedies of third persons against the United States described in section 1346(b) of title 28, for such damage or injury." 90 Stat. 1986(f), as amended, 10 U. S. C. § 1089(f).

Another subsection makes the same indemnification arrangement available to members of the National Aeronautics and Space Administration. See 90 Stat. 1989, 42 U. S. C. § 2458a(f).

[2] According to the Navy Department's regulations:

"6. Extent of Protection. Reference (b) [the Gonzalez Act] extends coverage within the United States and its possessions by making suit against the United States under the Federal Tort Claims Act the exclusive remedy for an injured party. Where the Federal Tort Claims Act does not apply (as, for example, where the acts giving rise to the claim occurred outside the United States), coverage is provided by allowing the Secretary of Defense to hold harmless or provide liability insurance for health care personnel.

"7. Exercise of Authority. By reference (a), the Secretary of Defense delegated to the Secretary of the Navy the authority to hold harmless or provide liability insurance for Navy health care personnel. All persons referred to in paragraph 4 above and in subsection (a) of reference (b) are hereby held harmless for damages resulting from negligent or wrongful acts or omissions while acting within the scope of duties and assigned to duty in a foreign country, or detailed for service with other than a Federal agency, or if the circumstances are such as are likely to preclude remedy against the United States under the Federal Tort Claims Act, as provided by subsection (f) of reference (b)." Department of the Navy, SECNAV INSTRUCTION 6300.3, JAG:14C (Mar. 14, 1978), App. to Brief for Respondents 2a–3a.

personnel and their dependents assigned to duty in foreign countries. The Federal Employees Liability Reform and Tort Compensation Act of 1988 (Liability Reform Act) that the Court construes today says nothing about this special situation; yet, the effect of today's decision is to render subsection (f) of the Gonzalez Act virtually meaningless. There is nothing in the legislative history of the Liability Reform Act to indicate that Congress intended this result. On the contrary, there is strong evidence in both the legislative history, and in the language of §§ 2 and 5(b)(2)(B) of the statute, that Congress intended to preserve pre-existing remedies. This point is clarified by examining the two statutes separately and in chronological order.

I

The principal purpose of the Gonzalez Act is succinctly stated in its preamble. It was enacted

> "[t]o provide for an exclusive remedy against the United States in suits based upon medical malpractice on the part of medical personnel of the armed forces, the Defense Department, the Central Intelligence Agency, and the National Aeronautics and Space Administration, and for other purposes." 90 Stat. 1985.

To achieve its purpose, Congress simply followed the precedent set by four previous amendments to the Federal Tort Claims Act (FTCA), none of which had curtailed any pre-existing remedies.[3]

---

[3] As the Senate Report explained:

"By making the Federal Tort Claims Act an exclusive remedy, a claimant is forced to sue the United States for damages rather than a government employee in his personal capacity. At least four existing statutes make the Federal Tort Claims Act an exclusive remedy in order to protect a certain class of government employee from personal liability.

"In 1961 the Government Driver's Act (Public Law 87–258) made the Federal Tort Claims Act the exclusive remedy for damages sustained as a result of the negligent operation of a motor vehicle by a federal driver acting within the scope of his employment. The result was to protect federal

For claims not covered by the FTCA, such as for those claims arising in foreign countries, the Gonzalez Act authorized medical personnel to be insured or indemnified by the Federal Government. See n. 1, *supra*. By that arrangement, Congress protected Government doctors from personal liability for services performed in the course of their overseas duties, and at the same time, preserved the common-law remedy for American victims of medical malpractice.

The Court does not disagree with this interpretation of the Gonzalez Act, see *ante*, at 170–171, or with the Court of Appeals' conclusion that respondent's claim was viable prior to the enactment of the Liability Reform Act in 1988. See *ante*, at 172. Thus, the question is whether the Liability Reform Act withdrew the remedy for malpractice claims arising outside of the United States that had been expressly preserved by subsection (f) of the Gonzalez Act.

## II

The Liability Reform Act was a direct response to this Court's decision in *Westfall* v. *Erwin*, 484 U. S. 292 (1988).

---

employees in their individual capacity from tort liability arising from the operation of motor vehicles.

"In 1965, Congress enacted a bill patterned after the Government Driver's Act which protected medical personnel of the Veterans' Administration for individual tort liability from malpractice when acting within the scope of their employment (Public Law 89–311).

"Similar legislation making the Federal Tort Claims Act the exclusive remedy for malpractice was enacted in 1970 to immunize medical personnel of the Public Health Service from personal liability arising out of performance of their medical duties (Public Law 91–623).

"More recently, the Foreign Relations Authorization Act of fiscal year of 1977 (Public Law 94–350) immunized medical personnel of the State Department from personal liability for medical malpractice.

"In all essential respects these four statutes are similar. Each statute abolished old rights recognized by the common law to obtain the legislative object of protecting certain federal employees from suit in their individual capacities.

"H. R. 3954 is modeled after these statutes." S. Rep. No. 94–1264, p. 3 (1976).

In *Westfall*, we resolved a conflict among the Courts of Appeals on the question whether conduct by federal officials must be discretionary in nature, as well as being within the scope of their employment, before the conduct is absolutely immune from state-law tort liability. *Id.*, at 295. We held unanimously that nondiscretionary conduct was not entitled to such immunity. *Id.*, at 297.

Congress enacted the Liability Reform Act to protect all federal employees from the risk of personal liability that was thought to have been created by *Westfall*. Congress was particularly concerned that lower level employees, the rank and file "who are least likely to exercise discretion in carrying out their duties," were among those who were most likely to be affected by the *Westfall* decision. H. R. Rep. No. 100–700, p. 3 (1988).

Section 2 of the Liability Reform Act contains a detailed statement of Congress' reasons for enacting the statute.[4] Congress summarized its purpose as follows:

---

[4] In § 2 of Pub. L. 100–694, 102 Stat. 4563, Congress set forth the findings and purposes of the Liability Reform Act:

"(2) The United States, through the Federal Tort Claims Act, is responsible to injured persons for the common law torts of its employees in the same manner in which the common law historically has recognized the responsibility of an employer for torts committed by its employees within the scope of their employment.

.      .      .      .      .

"(4) Recent judicial decisions, and particularly the decision of the United States Supreme Court in Westfall v. Erwin, have seriously eroded the common law tort immunity previously available to Federal employees.

"(5) This erosion of immunity of Federal employees from common law tort liability has created an immediate crisis involving the prospect of personal liability and the threat of protracted personal tort litigation for the entire Federal workforce.

.      .      .      .      .

"(7) In its opinion in Westfall v. Erwin, the Supreme Court indicated that the Congress is in the best position to determine the extent to which Federal employees should be personally liable for common law torts, and that legislative consideration of this matter would be useful." 102 Stat. 4563–4564, note following 28 U. S. C. § 2671.

"It is the purpose of this Act to protect Federal employees from personal liability for common law torts committed within the scope of their employment, *while providing persons injured by the common law torts of Federal employees with an appropriate remedy against the United States.*"   102 Stat. 4564, note following 28 U. S. C. § 2671 (emphasis added).

Notably, neither that statement, nor anything in the legislative history of the Act, reveals any intent on the part of Congress to limit the scope of pre-existing remedies available to victims of torts committed by federal employees.[5]

There were two recurring themes throughout the hearings on the bill that gave rise to the Liability Reform Act.   One theme was that this legislation was not intended to curtail any existing remedies already available to tort victims against federal employees,[6] and the other was that Congress

---

[5] Senator Grassley, one of the sponsors of the legislation, explained:

"As my colleagues know, the FTCA has generally worked well over the past four decades in providing fair and expeditious compensation to persons injured by the common law torts of Federal employees.   This bill, by covering Westfall-type cases under the FTCA, assures that victims of common law torts of Federal employees will be fairly compensated.   At the same time, it provides a needed measure of employee protection from personal liability.

"Mr. President, I would like to emphasize that this bill does not have any effect on the so-called Bivens cases or Constitutional tort claims.   Although this too is an area of concern to me—and I have introduced corrective legislation in the past—the bill that we pass today has no impact on these cases, which can continue to be brought against individual Government officials."   134 Cong. Rec. 29933 (1988).

[6] Thus, a representative of the Department of Justice testified:

"H. R. 4358 would do nothing more than extend the protection now enjoyed by doctors, drivers, and DoD attorneys to all federal employees.   It also will ensure equitable and consistent treatment for persons injured by federal conduct, without regard to the status of the employee whose actions are alleged to have caused the injury."   Hearings on H. R. 4358 et al. before the Subcommittee on Administrative Law and Governmental Rela-

sought to protect all federal employees from suit by substituting the United States for the individual tortfeasor as the responsible party—a substitution that would normally benefit the injured party who would no longer have to worry about whether he or she would be able to collect the judgment. The bill was supported by the Department of Justice and two unions representing federal employees.

Members of Congress not only articulated their intent to preserve the scope of existing remedies during the hearings, but also reinforced that intent by amending the original bill to include § 5(b)(2), 28 U. S. C. § 2679(b)(2). As amended, § 5(b)(2) provides:

> "(2) Paragraph (1) does not extend or apply to a civil action against an employee of the Government—
>
> "(A) which is brought for a violation of the Constitution of the United States, or
>
> "(B) which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized." 28 U. S. C. § 2679(b)(2).

As to § 5(b)(2)(A), Congress made explicit throughout the hearings its intent to exclude constitutional violations from the Liability Reform Act's coverage.[7] The Justice Department endorsed that view:

---

tions of the House Committee on the Judiciary, 100th Cong., 2d Sess., 76 (1988) (hereinafter House Hearings).

The point was reiterated by others during the hearings and debate. See *id.*, at 34 ("In no way, in no way at all, does this measure infringe or diminish any legal rights of individuals") (statement of Rep. Wolf); *id.*, at 44 ("[W]e want to protect the employees without diminishing the rights of anyone who might be injured") (statement of Chairman Frank); 134 Cong. Rec. 15963 (1988) ("Other remedies under other acts, Civil Rights Act, are not affected at all") (statement of Chairman Frank).

[7] See, *e. g.*, House Hearings 40, 58, 127, 195.

"It also is important to emphasize the [Liability Reform Act] would apply only to cases alleging injury caused by ordinary common law tortious conduct. By common law tortious conduct, we mean not just causes of action based upon the 'common' or case law of the several states, but also causes of action codified in state statutes that permit recovery for negligence, such as, for example, wrongful death statutes. The term does not include, and [the Liability Reform Act] is not intended to apply to, cases that allege violations of constitutional rights, or what commonly are known as *Bivens* cases. Persons alleging constitutional torts will, under [the Liability Reform Act], remain free to pursue a remedy against the individual employee if they so choose." House Hearings 78.

The Justice Department explained that the issue of constitutional torts was a controversial one, and one that was not affected by the Court's decision in *Westfall* because *Westfall* was limited to common-law torts. *Id.*, at 79. Members of Congress stressed that constitutional torts would not be encompassed by this legislation, and thus, there was no need to address the issue. See, *e. g., id.*, at 40, 195. During the hearings, however, there was some suggestion that an action could involve both a common-law tort and a constitutional violation. See, *e. g., id.*, at 42, 127, 173. In response to this concern, Congress apparently added § 5(b)(2)(A) to make explicit what it had assumed all along: that victims of constitutional violations would remain free to pursue a remedy against the individual employee if they chose to do so.

As to § 5(b)(2)(B), Congress provided no specific explanation for its inclusion, other than its general concern with preserving all pre-existing remedies available to victims of torts committed by federal employees. Just as Congress added § 5(b)(2)(A) to ensure that constitutional torts would not be included within the scope of the Liability Reform Act, similarly, it must have added § 5(b)(2)(B) to ensure that pre-existing remedies protected by a statute would not be af-

fected as well. Congress did not need to add this amendment, any more than it needed to add § 5(b)(2)(A), because just as constitutional torts are, for the most part, outside the realm of common-law torts, similarly statutory violations are also outside the realm of common-law torts. Nevertheless, this action is consistent with Congress' general intent, expressed throughout the hearings and in the House Report, that it not curtail any pre-existing remedies of tort victims. Unless the amendment was intended to preserve the Gonzalez Act remedy, it was essentially without purpose—a result Congress clearly could not have intended.

The Court's reading of the Liability Reform Act makes § 5(b)(2)(B) superfluous.[8] Indeed, the Court never says what kind of statutory violation § 5(b)(2)(B) is meant to protect, nor does Congress provide any specific guidance. To avoid the Court's result of turning this subsection into surplusage, it should be construed to accomplish the purpose repeatedly identified in the hearings, which is to avoid any interpretation of the Act that would limit the scope of pre-existing common-law remedies. This purpose was unequivocally identified in the House Report on the bill. It explains: "Under H. R. 4612, no one who previously had the right to initiate a lawsuit will lose that right." H. R. Rep. No. 100–700, at 7.[9]

---

[8] The Court's approach today runs counter to the well-established rule that meaning should be attributed to each subsection of a statute. See *United States* v. *Morton*, 467 U. S. 822, 828 (1984); see also 2A C. Sands, Sutherland on Statutory Construction § 46.06, p. 104 (rev. 4th ed. 1984) ("A statute should be construed so that effect is given to all of its provisions, so that no part will be inoperative or superfluous, void or insignificant") (footnotes omitted).

[9] The Court today attempts to explain the House Report's language away by claiming that because it appears in a section pertaining to implementation of the Act, it says nothing more than that those plaintiffs who had actions pending would be permitted to pursue them by substituting the Government for the individual employee. See *ante*, at 167–168, n. 9. However, similar language also appears in the House Report *before* any discussion of what would happen during the transition period. According to the House Report, the Liability Reform Act "does not change the law,

The description of § 5 in the section-by-section analysis of the Liability Reform Act is consistent with the view that it was intended to describe the remedy available to a plaintiff in a common-law cause of action for malpractice arising in foreign countries that was specifically authorized by subsection (f) of the Gonzalez Act. The House Report states that the section "would make it clear that the remedy provided in this legislation does not extend to constitutional torts or to *causes of action specifically authorized to be brought against an individual by another statute of the United States*." *Id.*, at 8 (emphasis added).

The Court argues that the "Gonzalez Act remedy" has not been impliedly repealed because "[t]he Gonzalez Act functions solely to protect military medical personnel from malpractice liability; it does not create rights in favor of malpractice plaintiffs." *Ante*, at 172. This is not strictly accurate because subsection (f) of the Gonzalez Act, as implemented by regulation, did provide malpractice plaintiffs with an important remedy against the United States as the real party in interest that they did not previously have.[10] Moreover, this

---

as interpreted by the Courts, with respect to the availability of other recognized causes of action; nor does it either expand or diminish rights established under other Federal statutes." H. R. Rep. No. 100–700, p. 7 (1988). Such language indicates that Congress was concerned not just with preserving procedural rights, as the Court would have it, but also with preserving existing substantive rights.

[10] The Eleventh Circuit recognized that subsection (f) could not be ignored: "Because subsection (f) was written into the Gonzalez Act, we are required to give it meaning." *Newman* v. *Soballe*, 871 F. 2d 969, 974 (1989). The Tenth Circuit also acknowledged, albeit in dicta, that subsection (f) of the Gonzalez Act provided an important remedy:

"The purpose of [subsection (f)] is to provide a method for the assumption by the government of responsibility for damage claims against its military medical personnel arising from medical care given in foreign countries in the scope of their employment. Behind it is the desire to protect military medical personnel from the ever-present danger of personal liability . . . while preserving a means for compensating malpractice victims for their injuries. . . . Instead of granting military medical personnel practicing in foreign countries absolute immunity from suit for acts within the scope of

provision of the Gonzalez Act amounted to an express preservation of a common-law remedy. Because § 5(b)(2)(B) of the Liability Reform Act is otherwise virtually meaningless,[11] I believe it should be construed to preserve that remedy. Otherwise, without any justification for doing so, the Liability Reform Act has silently repealed this provision of the Gonzalez Act.

Under the Court's holding, the Liability Reform Act has closed the door to all federal and state courts for American victims of malpractice by federal health care personnel stationed abroad.[12] No legislative purpose is achieved by that holding because these personnel are already protected from personal liability by the Gonzalez Act and the indemnity regulation. The only significant effect of this holding is to deprive an important class of potential plaintiffs of their pre-existing judicial remedy. Respondents, and other plaintiffs like them, are now precluded from pursuing their pre-

---

their employment, Congress elected to have the government protect them through indemnification or insurance. The effect of this approach rather than absolute immunity is to ensure a remedy to victims of malpractice by military medical personnel assigned to a foreign country." *Jackson* v. *Kelly*, 557 F. 2d 735, 740–741 (1977).

[11] The theoretical possibility of litigation in a foreign court, see *ante*, at 172, n. 15, was never even mentioned in the legislative history of either the Gonzalez Act or the Liability Reform Act.

[12] The only remedy that remains available to respondents after the Court's decision today is the possibility of a private bill. See *Office of Personnel Management* v. *Richmond*, 496 U. S. 414 (1990). Ironically, the Court, by its restrictive reading, now leaves families of service personnel who have been injured by federal health workers in foreign countries with little choice but to seek private bills in order to receive compensation; this is the very policy that Congress sought to avoid when it enacted the FTCA over 40 years ago. At the time of the FTCA's enactment, Congress sought to rectify the shortcomings of a system that was "unduly burdensome to the Congress" and was "unjust to the claimants" because it did not "accord to injured parties a recovery as a matter of right but base[d] any award that may be made on considerations of grace." H. R. Rep. No. 1287, 79th Cong., 1st Sess., 2 (1945). Congress intended the FTCA to "establish a uniform system" to replace the existing system of private bills. *Id.*, at 3.

existing common-law claims against an allegedly negligent doctor working abroad, even though the doctor is indemnified by the Federal Government. I cannot believe that Congress intended that result. I am therefore persuaded that § 5(b)(2)(B) should be read in a way that prevents it from being nothing more than a meaningless appendage and allows it to fulfill its intended purpose of preserving pre-existing claims.[13]

In *Westfall* v. *Erwin*, 484 U. S. 292 (1988), we said that "Congress is in the best position to provide guidance for the complex and often highly empirical inquiry into whether absolute immunity is warranted in a particular context" and we suggested that "[l]egislated standards governing the immunity of federal employees involved in state-law tort actions would be useful." *Id.*, at 300. Today, the Court, by deciding that a section of Congress' handiwork is a nullity, once again invites Congress to step in and "provide guidance."

I respectfully dissent.

---

[13] In response to this dissent, the Court has restated its argument that Dr. Marshall did not "violate" the Gonzalez Act. See *ante*, at 174. As a matter of pure grammar, the Court is, of course, correct. It nevertheless remains true that this literal reading of the Liability Reform Act fails to answer two critical questions: (1) What legislative purpose is served by depriving malpractice victims, such as respondents, of their Gonzalez Act remedy? (2) If § 5(b)(2)(B) does not preserve that remedy, then what was its purpose? If forced to choose between an assumption that Congress used imperfect grammar to achieve a benign purpose identified in the legislative history and an assumption that it inadvertently achieved a heartless purpose disclaimed in the legislative history, I have no difficulty in choosing the former.