O’MALLEY, Circuit Judge,
concurring in part, dissenting in part.
I agree with most of the thoughtful analysis in the majority opinion. I cannot, however, agree with the ultimate conclusion that the Federal Aviation Administration (“FAA”) is exempt from the overtime obligations imposed on employers under the Fair Labor Standards Act of 1938 (“FLSA”), 29 U.S.C. § 207(a). Specifically, I agree that: (1) the Court of Federal Claims had jurisdiction over the controllers’ claims under the Tucker Act, 28 U.S.C. § 1491(a)(1); (2) the FAA is an employer within the meaning of the FLSA and is generally bound by its provisions; (3) the government has failed to identify an express statutory provision that exempts the FAA from compliance with the overtime requirements under the FLSA; and (4) the Department of Transportation and Related Agencies Appropriations Act, 1996 (“Appropriations Act”) does not prohibit the FAA from adopting personnel policies that mirror those in Title 5 of the United States Code and from implementing those policies in ways contemplated by Title 5’s implementing regulations, even when the specific Title 5 policy is not expressly enumerated in the Appropriations Act. I do not agree, however, that the FAA is free to adopt a personnel policy from an unenumerated section of Title 5 when doing so would violate an otherwise applicable provision of governing federal law. In other words, the flexibility granted to the FAA under the Appropriations Act is not unlimited by other governing provisions of law. And it does not give the FAA’s optional personnel policy choices the force of a Congressional enactment sufficient to overcome any such legal limitations.
For these reasons, I respectfully dissent from the judgment the majority enters. I would affirm the Claims Court’s judgment in favor of the controllers and find that: (1) the express statutory exemption from the overtime obligations of the FLSA in 5 U.S.C §§ 5543 and 6120-6133 no longer applies to the FAA and (2) the FAA must comply with the FLSA overtime compensation provisions of the FLSA.
As the majority notes, the FLSA requires employers to provide compensation to employees who work “for a workweek longer than forty hours ... at a rate not less than one and one-half times the regular rate at which [the employee] is employed.” 29 U.S.C. § 207(a)(1). Congress has extended application of the FLSA overtime provision to federal employees, see Pub.L. No. 93-259, 88 Stat. 55 (1974) (codified at 29 U.S.C. § 203(e)(2)), and there is no dispute that the FLSA generally applies to the controllers here. See Majority at 1372. The majority finds, however, that the FAA has the authority to exempt itself from the overtime provisions of the FLSA for that class of federal employees within its employ. I do not agree.
When Congress has intended to exempt certain employers or employees from the FLSA overtime provisions, it has created express and unambiguous exceptions to the requirement. The FLSA itself, for example, provides an express statutory exception to the overtime provision and provides for the granting of compensatory time in lieu of one and one-half times compensation for certain nonfederal gov *1377 ernment employees. See 29 U.S.C. § 207(o) (excepting employees of a state, local, and interstate agency). Likewise, 5 U.S.C. § 5543 contains an express exception to the FLSA’s overtime requirement for employees of federal agencies. See 5 U.S.C. § 5543(a). Under that provision, an agency head may generally grant an employee compensatory time off from scheduled work or duty in lieu of monetary compensation. See id. Sections 6120-6133 of Title 5 also provide exceptions to the FLSA requirement regarding overtime compensation for other specified classes of federal employees. See Majority at 1365-66. Outside of these express exceptions to the FLSA overtime provision, that provision mandates monetary overtime compensation for federal employees generally.
Under the provisions of the Appropriations Act, Congress granted the FAA the authority to develop a personnel management system (“PMS”) to provide an overhaul of the FAA and allow it to develop new personnel and procurement systems. See Appropriations Act, Pub.L. No. 104-50, §§ 347, 109 Stat. 436 (1995) (codified as amended at 49 U.S.C. § 40122(g) (2000)); see also S.Rep. No. 104-251, at 11 (1996). Part of that authority included granting the FAA the ability to avoid many federal personnel laws and regulations that Congress felt might inhibit the effectiveness of the FAA. See id. In granting the FAA that authority, Congress sketched certain boundaries within which the PMS was to operate. One express provision stated that the PMS was exempted from Title 5, save a few enumerated exceptions. See id. § 40122(g)(2).
Section 40122(g)(2) of Title 49 states that “[t]he provisions of Title 5 shall not apply to the” PMS. That section carved out only a few exceptions to this general exemption from Title 5, but the Title 5 overtime exemption for federal employees was not on that list. See id. Accordingly, a plain reading of § 40122(g)(2) demonstrates that Congress intended for the FAA to be free from the strictures of Title 5, save in those areas specifically enumerated. There is no ambiguity in the language; § 40122(g)(2) does not list the Title 5 exemption from the FLSA overtime requirement for federal employees as a surviving section. The only route by which the controllers could have received compensatory time instead of cash, i.e., the Title 5 exemption, was closed. Congress did not otherwise create an exception to the FLSA overtime requirement for FAA employees. And, as the majority notes, absent some statutory provision exempting the FAA from complying with the FLSA overtime requirement, the FAA’s compensatory time and credit hours policy is unlawful. See Majority at 1372.
Despite this uncontroversial view of the actual language of § 40122(g)(2), the majority finds that the Title 5 exemptions to the FLSA overtime requirements impliedly survived creation of the PMS. Majority at 1373-74. Yet, as explained above, when Congress has intended to exempt employers from the obligation of the FLSA overtime requirement, it has explicitly said so. When Congress plainly says what it means in a statute, such as stating that Title 5 does not apply to the PMS, we are obliged to give full effect to that intent. See Dodd v. United States, 545 U.S. 353, 357, 125 S.Ct. 2478, 162 L.Ed.2d 343 (2005) (“[The] legislature says in a statute what it means and means in a statute what it says there.”) (quoting Conn. Nat’l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)). We may not create additional exceptions contrary to Congress’s will. See United States v. Smith, 499 U.S. 160, 167, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991) (‘Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions *1378 are not to be implied,, in the absence of a contrary legislative intent.”) (quoting Andrus v. Glover Construction Co., 446 U.S. 608, 616-17, 100 S.Ct. 1905, 64 L.Ed.2d 548 (1980)).
Had Congress intended to exclude the FAA from the FLSA overtime requirements, it easily could have included the relevant Title 5 exceptions in the list of enumerated Title 5 provisions that survived the creation of the PMS. See 49 U.S.C. § 40122(g). It did not.
Congress’s decision to remove the PMS from the strictures of Title 5 — and the overtime exemption — was deliberate. In 1996, Congress passed the Federal Aviation Reauthorization Act of 1996, Pub.L. No. 104-264, §§ 201-30, 110 Stat. 3213, 3232 (Oct. 9, 1996) (“Reauthorization Act”). The Reauthorization Act authorized the FAA to set compensation guidelines for FAA employees. See id. § 225 (codified at 49 U.S.C. § 106(i )(1)). The legislative history of the Reauthorization Act bears out Congress’s decision to remove the PMS from the FLSA overtime exemption.
Early reports relating to the Reauthori-zation Act from the House and Senate demonstrate that Congress was concerned that, if given free rein to create personnel policies of its choosing, the FAA might ignore certain provisions of Title 5 that Congress deemed important. See S.Rep. No. 104-251, at 59 (1996); H.R.Rep. No. 104-475, at 4 (1996). In its earliest iterations, the bill contained language for a proposed section 49 U.S.C. § 40122(f) that emphasized those provisions of Title 5 with which Congress was concerned, such as the whistleblower and antidiscrimination provisions of Title 5, and said that the FAA must comply with those provisions. The other provisions of Title 5 were simply not mentioned. Later, Congress chose to remove that mandatory language and, instead, chose to exempt the FAA from Title 5 completely, but for a few enumerated sections that, again, reflected the specific provisions with which Congress was most concerned. The overtime provisions of Title 5 were never mentioned, either affirmatively — as in the early drafts — or as enumerated exceptions — reflected in the final draft. Thus, it is clear that Congress considered the individual sections of Title 5 and made a conscious choice about which provisions would and would not apply to the FAA.
The majority relies on two points to support its conclusion that, although not referenced in the Appropriations Act, 5 U.S.C. §§ 5543 and 6120-6133 continue to authorize a departure from the FLSA overtime requirement. Majority at 1372. The majority first looks to 49 U.S.C § 40122(g)(1), which states that the PMS was to provide “greater flexibility in the hiring, training, compensation, and location of [FAA] personnel.” 49 U.S.C. § 40122(g)(1). But, that language is not sufficient to revive the overtime exemption of Title 5 and give it the force of law. Whatever the flexibility language in § 40122(g)(1) means, it cannot mean that Congress intended to take away most express legal requirements of Title 5 in one breath and restore those same requirements in another. While the majority recognizes that § 40122(g)(1) must be read in the context of the statutes of which it is part (Majority at 1373-74), it sweeps away the language directly after it in § 40122(g)(2). As explained above, § 40122(g)(2) expressly states which provisions of Title 5 survive the creation of the PMS, and the overtime exemption is not one of them.
The majority next looks to a provision of 49 U.S.C. § 106(i )(1), added by the Reau-thorization Act, which authorized the FAA administrator to fix compensation for FAA employees and not “be bound by any requirement to establish such compensation *1379 or benefits at particular levels.” 49 U.S.C. § 106(Z )(1). The legislative history of that section, however, demonstrates that Congress intended through this language to make clear that the compensation provisions of Title 5 were not to be incorporated into the PMS. An early Senate proposal regarding 49 U.S.C. § 106(0(1) explicitly called for FAA employees to “be compensated in accordance with Title 5.” S.Rep. No. 104-251, at 50 (1996); S.Rep. No. 104-333, at 52 (1996). A House Report, however, eliminated the applicability of Title 5’s compensation provisions. See H.R.Rep. No. 104-848, at 21 (1996).[1] And, the language of the House Report mirrors the final language of § 106(0(1). This alone demonstrates that Congress was aware of the compensation provisions of Title 5 and explicitly chose not to make them part of the PMS.
This reading is consistent with the goals behind creation of the PMS. Congress explained that one primary reason for creating the PMS was to provide the FAA flexibility in hiring and compensation matters so as to make the agency function like a private sector employer. See H.R.Rep. No. 104-475, at 31 (1996) (stating that the FAA “should have the flexibility to hire and fire as in the private sector”); S.Rep. No. 104-251, at 17 (1996) (“exempting the FAA from personnel requirements and allowing the agency to offer wages that are competitive in the private market”). Requiring the FAA to comply with the overtime provisions of the FLSA is consistent with giving the FAA the flexibility to operate much like private sector companies, all of whom are bound by the FLSA’s compensation provisions. Congress intended to give the FAA the ability to compete with the private sector. A more reasonable reading of the legislative history— along with the actual text of the PMS — is that Congress intended to allow the FAA to operate akin to a private enterprise, not subject to most of the provisions of Title 5 and subject to the overtime compensation requirements of the FLSA.
While I do not disagree that the FAA is permitted to mirror its own personnel policies on non-enumerated sections of Title 5, and, thus, is not barred from adopting, as its own, Title 5-like policies generally, that permission is not unbounded. The FAA may not choose to create a policy mimicking something in Title 5 if that policy would be otherwise prohibited by law, such as the FLSA.
For these reasons, I would affirm the judgment of the Claim’s Court.

. “(1) Officers and employees. Except as provided in section 40122(a) of this title and section 347 of Public Law 104-50, the Administrator is authorized, in the performance of the functions of the Administrator, to appoint, transfer, and fix the compensation of such officers and employees, including attorneys, as may be necessary to carry out the functions of the Administrator and the Administration. In fixing compensation and benefits of officers and employees, the Administrator shall not engage in any type of bargaining, except to the extent provided for in section 40122(a), nor shall the Administrator be bound by any requirement to establish such compensation or benefits at particular levels.”