**Victor CAPOZZI and General Aviation Services, Inc., Plaintiffs,**

v.

**DEPARTMENT OF TRANSPORTATION, Federal Aviation Administration, Sharon Felton, James Volner, Gary Clarke, William Wickes, Stephen Hull and Gary Lopez, Defendants.**

No. CIV. A. 98–11058–PBS.

United States District Court,
D. Massachusetts.

March 2, 2001.

Sharon D. Meyers, Strauss & Meyers, Salem, MA, Louis J. Muggeo, Danvers, MA, for Plaintiffs.

Barbara Healy Smith, U.S. Attorney's Office, Paul F. Kelly, Segal, Roitman & Coleman, Boston, MA, for Defendants.

### MEMORANDUM AND ORDER

SARIS, District Judge.

### I. INTRODUCTION

Plaintiffs Victor Capozzi and General Aviation Services, Inc. ("GAS") bring this action[1] against the Federal Aviation Administration ("FAA"), claiming that they have been harassed by a series of regulatory delays and actions by Defendant Sharon Felton, an FAA employee, with whom Capozzi had an affair; and that other FAA employees retaliated against Plaintiffs when they complained to Felton's superiors about the harassment in violation of their First Amendment rights. Defendants have filed motions for judgment on the pleadings pursuant to Fed.

R.Civ.P. 12(c). After a hearing, the Court allows the motions, but only in part.

### II. BACKGROUND

When all reasonable inferences are drawn in favor of the non-moving parties, the verified complaint alleges the following facts.

Plaintiff Victor Capozzi of Beverly, Massachusetts owns and operates a Fixed Base Operation ("FBO") known as General Aviation Services, Inc. ("GAS"), which is located at the Beverly Airport. GAS provides aviation-related services, including flight training, air taxi, and commercial operations. GAS has eighteen to twenty aircraft employees and contracts with six independent certified flight instructors.

In January 1993, GAS applied to become a certified charter operation and needed to obtain FAA approval through the Flight Standard District Office ("FSDO") located at Hanscom Air Force Base. The FSDO team assigned to handle the certification included Defendant Sharon Felton.

Felton was the Principal Operations Inspector ("POI") assigned to GAS, and is employed by the FAA at the Flight Standard District Operations at the FAA office at Hanscom Air Base. The other defendants are also FAA employees.

While she was the POI of GAS, Felton had a consensual sexual relationship with Capozzi from June 1993 to October 1993

---

1. The verified complaint contains the following counts: violation of Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 and Mass. Gen. L. ch. 12, § 11(I) (Count One); violation of civil rights in violation of the First, Fourth, and Fourteenth Amendments and the Constitution of the Commonwealth of Massachusetts (Count Two); conspiracy in violation of 42 U.S.C. §§ 1983 and 1985(3) (Count Three); supervisory liability against Gary Lopez and Gary Clarke (Count Four); conspiracy against Defendants Lopez and Clarke (Count Five); intentional infliction of emotional distress (Count Six); negligent infliction of emotional distress (Count Seven). The introduction alleges that this action is brought against the United States Department of Transportation pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671, although there is no separate count against the federal agency. Moreover, contrary to Plaintiffs' claim in their memorandum, there is no count under Mass. Gen. L. ch. 151B.

when Capozzi terminated the affair. At one point, Felton informed plaintiff that she sought psychiatric help for "compulsive addictive behavior." Scorned, Felton became angry with Capozzi and sought revenge against him in her capacity as POI. Capozzi reported this harassing behavior to Felton's supervisors—Defendant Clark, who is the Assistant FSDO Operator at the FAA office, and Defendant Lopez, Chief of Operations at the FSDO.

This remonstrance resulted in retaliation by FAA officials. Shortly after Capozzi complained to Felton's supervisors, four investigators were sent to GAS asking for records. When questioned as to the reason for reviewing all the records, Felton stated, "This is what you get for complaining."

Although the complaint is poorly drafted (*see e.g.*, Compl. ¶ 34), Capozzi seems to be alleging the following chronology of harassment incidents:

— On March 24, 1994, Felton failed to appear for a scheduled appointment to interview the new Director of Operations for GAS; shut down GAS for a two-week period; and would not allow any planes to fly.

— On March 29, 1994, after a Chief Pilot was approved for GAS, Felton revoked the approval of the pilot, preventing him from flying for several weeks.

— In January 1995, Defendant Wickes, the new POI and a friend of Felton, told a GAS customer, Business Express, not to fly with GAS. As a result, Business Express stopped doing business with GAS.

— On January 26, 1995, Wickes and Felton interrogated GAS Captain Dawn Greer for more than one day, causing the captain's plane to be grounded overnight.

— Between December 12, 1994 and January 26, 1995, Defendant Volner unduly delayed by six weeks the approval of a newly purchased Cessna.

— In July 1995, Defendant Hull, the assistant POI for GAS, had a discussion with Candace Quinn, a GAS flight instructor, in which he said that he was aware of the claims of harassment by Plaintiffs; that Quinn should move on and not work with Plaintiffs; that the FAA wanted to take her certificate because she worked for Plaintiffs; and that Quinn should blame a minor air space violation on Plaintiffs. Allegedly, Hull also told Quinn that he would "take care of the violation" and then asked her for a date.

— On April 2, 1996, Lopez decided that because of the difficulties with Felton and the possibility of litigation by Plaintiff, Capozzi's position as an accident prevention counselor was not renewed.

— On an unspecified date, Plaintiffs were informed that there would be no FAA support, endorsement, sponsorship, or mailings to help with the annual fuel farm seminar run by Plaintiffs.

Capozzi continued to complain about the harassment. In response, Felton was assigned as the POI of a competing operator, but continued to work at Beverly Airport and to affront Plaintiff and GAS employees.

Plaintiff GAS claims that as a result of this pattern of retaliatory harassment, it suffered a loss of business advantage and other economic harm. Plaintiff Capozzi states that he has experienced depression, weight loss, insomnia and heart palpitations which required medical attention and treatment.

Plaintiffs filed a letter of claim dated January 26, 1996 and amended their letter of claim on May 17, 1996 pursuant to 28

U.S.C. § 2675(a).[2] There was no response. This action was filed on May 25, 1998.

## III. DISCUSSION

### 1. *Standard for Motion to Dismiss*

 In evaluating a motion to dismiss a complaint for failure to state an actionable claim, a court must accept as true all well-pleaded factual averments and indulge all reasonable inferences in the plaintiff's favor. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (holding that federal courts may not apply a heightened pleading standard in civil rights cases). In a civil rights action, a plaintiff must plead specific facts from which to infer illegal motive with respect to constitutional claims in which "improper motive" is an essential element for the plaintiff to prove. *Judge v. City of Lowell*, 160 F.3d 67, 74 (1st Cir.1998). Bald assertions, unsupportable conclusions, circumlocutions, and the like need not be credited. *Correa-Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990); *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989). It is only when the facts alleged, if proven, will not justify recovery that an order of dismissal under Rule 12(c) may stand. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

### 2. *Count One—Civil Rights Violations (§ 1983 and MCRA)*

 The individual defendants move to dismiss the civil rights claims under 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. L. Ch. 12, § 11(I), in Count One on two grounds. First, they correctly point out that none of the individual defendants, all of whom are federal employees, is a person "acting under color of state law." *Cardozo v. Graham*, 848 F.Supp. 5, 10 (D.Mass.1994) (quoting *Chatman v. Hernandez*, 805 F.2d 453, 455 (1st Cir.1986)) ("The language of 42 U.S.C. § 1983 'applies to persons acting under color of state law and not to persons acting pursuant to federal law.' "). Therefore, there is no cause of action under § 1983.

Second, Defendants argue that the cause of action under the MCRA is barred under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2679(b)(1), which provides an exclusive remedy for all claims against federal employees acting within the scope of their employment except those set out in § 2679(b)(2), involving alleged violations of federal statutes and the federal constitution. *United States v. Smith*, 499 U.S. 160, 165, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991) (holding that the FTCA immunizes federal employees from suit even when the FTCA exception precludes recovery against the United States).

 Plaintiff contends that Felton was not acting within the scope of her employment, as required under 28 U.S.C. § 2679(b)(1), when she engaged in the alleged retaliatory actions, and urges this Court to strike the Attorney General's certification to the contrary. The Court has the discretion to do so; scope of employment certifications by the government are not conclusive and are subject to judicial review. *Lyons v. Brown*, 158 F.3d 605, 607 (1st Cir.1998) (involving a claim of sexual harassment against a federal employee). The Court must evaluate each act or incident alleged to be a violation of civil rights under the scope of employment test. *Id.* Capozzi has the burden of proof

---

**2.** Although Plaintiffs assert that they attached the administrative claim to the pleadings, it is not in the record.

to rebut the Attorney General's certification. *Id.* at 610.

■ · To determine whether certification is appropriate, a court must follow state law governing scope-of-employment. *Id.* Massachusetts courts adhere to a three-pronged scope-of-employment inquiry as to whether: (1) the conduct was of the kind the agent was employed to perform; (2) the conduct occurred substantially within the authorized time and space limits; and (3) the conduct was motivated, at least in part, by a purpose to serve the employer. *Operation Rescue Nat'l v. United States*, 975 F.Supp. 92, 106 (D.Mass.1997) (citing *Wang Labs., Inc. v. Bus. Incentives, Inc.*, 398 Mass. 854, 859, 501 N.E.2d 1163 (1986)). The *Wang* inquiry is based on the agent's actual and customary, rather than formally described, duties. *Id.* at 107.

■ While Felton's sexual affair with Plaintiff was certainly not the kind of conduct Felton was employed to perform, Plaintiffs have produced no evidence with respect to the other specific incidents to demonstrate that the alleged regulatory misconduct exceeded the scope of employment. However, *Lyons* recognized that certain work-related conduct might prove to be outside the scope of employment if it was done instead with "a private purpose on [defendant's] part to retaliate against [plaintiff] for rejecting his advances." 158 F.3d at 610. This count is dismissed against all defendants. However, if during discovery evidence is offered to prove that any of the incidents exceeds the scope of employment under the Massachusetts test, the Court will reconsider this ruling with

respect to Felton and hold an evidentiary hearing if necessary.

### 3. *Count Two—Violation of Civil Rights (Bivens)*

Count Two alleges that the individual defendants engaged in a pattern of administrative and regulatory misconduct by delaying administrative approvals, unnecessarily reviewing GAS records, conducting burdensome interrogation of GAS's pilot, and other things in violation of the First, Fourth,[3] and Fourteenth Amendments[4] to the United States Constitution and the state constitution. Defendants have raised a variety of defenses to these claims.

#### a. *Lack of Subject Matter Jurisdiction*

The government argues that this Court does not have jurisdiction because the cause of action is precluded by 49 U.S.C. § 46110(a) and (c), which provide that a person "disclosing a substantial interest" in an order of the FAA with respect to "aviation safety duties and powers" may apply for review of the order by filing a petition for review in the United States Court of Appeals; and that the Court of Appeals has exclusive jurisdiction to "affirm, amend, modify, or set aside any part of the order." Essentially, the government argues that this *Bivens* action is an end-run around the statutory procedure for challenging the FAA's regulatory orders.

Many circuits have held that a district court lacks subject matter jurisdiction over a *Bivens* action that is tantamount to a collateral challenge to a FAA order. *See Tur v. FAA*, 104 F.3d 290, 292 (9th Cir.

---

**3.** The parties did not brief well the Fourth Amendment claim, and I do not address it.

**4.** The Fourteenth Amendment is inapplicable because there is no state action here. I assume Plaintiffs intended to assert a *Bivens*

action against the federal employees. *See generally Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

1997) (rejecting *Bivens* action by a pilot against FAA officials claiming that he was denied due process through the officials' knowing use of false testimony before the administrative law judge when the pilot's airman's certificate was revoked because the plaintiff's claims are "inescapably intertwined with the merits of the previous revocation order"); *Green v. Brantley*, 981 F.2d 514, 521 (11th Cir.1993) (dismissing *Bivens* action against FAA officials alleging due process violations where the suit constituted "an impermissible collateral challenge to the agency order"); *Merritt v. Shuttle, Inc.*, 187 F.3d 263, 271 (2d Cir. 1999) (dismissing a pilot's *Bivens* action that, although styled in constitutional terms, disputed an ALJ's factual conclusion that the plaintiff bore responsibility for an ill-considered take-off decision and challenged the manner in which FAA officials conducted themselves during and after the incident, and thus ultimately was "inescapably intertwined with review of the [FAA] revocation order"); *Gaunce v. deVincentis*, 708 F.2d 1290, 1293 (7th Cir. 1983) (refusing to dispense with statutorily prescribed requirements even for due process claims raised in collateral attacks on FAA orders). *But see Mace v. Skinner*, 34 F.3d 854, 858 (9th Cir.1994) (permitting a *Bivens* action raising due process claims challenging the constitutionality of the FAA's revocation power).

■ Many of the allegations in the complaint do not fit neatly under § 46110. For example, the complaint alleges that a former paramour regulator and her friends retaliated against a company subject to her authority by unnecessarily asking for books and records in a burdensome way, unduly delaying agency actions, making untoward comments to a company cus-

tomer and a pilot employed by the company, and the like. Other allegations may well involve a collateral challenge to an agency "order" over which this Court has no jurisdiction, but a more expanded record is necessary to make that determination.[5] For instance, there is an allegation that Capozzi was not renewed as an accident prevention counselor and that the FAA stopped a sponsorship of Plaintiff's seminar. These may well be instances of agency inaction, rather than "orders." *See Aerosource, Inc. v. Slater*, 142 F.3d 572, 577–78 (3rd Cir.1998) (defining "order" to encompass FAA actions that "impose an obligation, deny a right, or fix some legal relationship").

The Court could find no cases where a *Bivens* cause of action alleging quid pro quo sexual harassment or retaliation for the exercise of First Amendment rights has been precluded by § 46110. *Cf. Mace*, 34 F.3d at 859–860 (finding jurisdiction over actions against FAA only as to "those classes of claims" reviewable under the Federal Aviation Act). Although the Court invited the government to supplement its brief on this point, it has not done so. Accordingly, while some of the allegations may well involve "orders," this Court has subject matter jurisdiction over the acts or conduct which are not "orders."

b. *Timeliness*

■ Defendant Felton alleges that the civil rights action against her is untimely. Although the alleged acts of retaliation end by April 2, 1996, Felton argues the action filed in May 1998 is time-barred because she no longer served as POI for GAS after 1994, and her last alleged contact with GAS was January 26, 1995. Under this chronology, the civil rights claim against

---

5. However, if an agency action does involve an order (i.e., revoking a pilot certification) plaintiffs cannot taxi around § 46110 by seek-

ing economic damages resulting from the order in a *Bivens* action. The alleged motivation is improper.

her accrued in January 1995. However, she continued to work at the FAA at the Beverly Airport, and Plaintiff alleges she was the mastermind behind the ongoing retaliation. The last alleged act of retaliation was in 1996.

■ The First Circuit considers three criteria to determine the sufficiency of a serial violation claim: (1) sufficient similarity such that there is a substantial relationship between the timely and untimely acts; (2) the frequency, repetition, and continuity of the timely and untimely acts; and (3) sufficient permanence of the acts to trigger awareness of the need to assert one's rights. *O'Rourke v. City of Providence*, 235 F.3d 713, 731 (1st Cir.2001) (involving a hostile work environment claim). Applying these criteria to the instant case and drawing all inferences against the non-moving party, I deny the motion to dismiss on timeliness grounds. However, I note that if discovery reveals no connection between Felton and the post-May 1995 conduct, the action against her may be dismissed.

#### c. *Qualified immunity*

■ All the individual defendants raise the claim of qualified immunity. "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). In a motion for judgment on the pleadings under Fed. R.Civ.P. 12(c), a court must take all the allegations of the complaint as true. At that early stage, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" *Behrens v. Pelletier*, 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996).

■ The allegation that FAA employees delayed regulatory action to punish Capozzi for complaining about the alleged sexual harassment by Felton is viable as a *Bivens* action under clearly established First Amendment jurisprudence. *See Baker v. Coxe*, 230 F.3d 470, 475 (1st Cir. 2000) (holding that the delay of a land use permit in unjustifiable retaliation for the applicant's expressions of his political views may violate the First Amendment if the plaintiff proves three elements: that he was engaged in protected speech; that he was qualified for the permit; and that the delay was in retaliation for protected speech).

■ In addition, Plaintiffs allege that Felton caused a series of financially harmful regulatory delays and actions to punish Capozzi for terminating a sexual relationship, and that these allegations state a claim of unlawful quid pro quo sexual discrimination under the Due Process Clause of the Fifth Amendment. This allegation raises a colorable *Bivens* claim. *See Wills v. Brown Univ.*, 184 F.3d 20, 29 (1st Cir. 1999) ("Quid pro quo cases normally involve situations in which someone with authority over the victim inflicts a penalty or withholds a benefit to obtain sexual favors . . . ."); *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 897 (1st Cir.1988) (holding that "quid pro quo" harassment occurs when a supervisor conditions the granting of an economic or other job benefit upon the receipt of sexual favors from a subordinate or punishes the subordinate for refusing to comply).

■ Finally, Plaintiffs allege that Felton also created a hostile regulatory environment by affronting GAS employees and Capozzi at the airport and engaging in petty regulatory harassment. While courts have recognized as clearly established causes of action alleging hostile *work* environments and hostile *educational*

environments since 1993, *see e.g. Markham v. White*, 172 F.3d 486, 492 (7th Cir. 1999) (recognizing a *Bivens* claim against DEA agents who allegedly created a sexually hostile environment for municipal police officer trainees in violation of plaintiffs' right to equal protection), Plaintiffs have pointed to no cases—and I've found none—that have established a claim of hostile regulatory environment. Accordingly, even if such a claim were cognizable, the vague allegations that Felton created a hostile regulatory environment (i.e., by offensive remarks) do not claim a clearly established violation of Plaintiffs' constitutional rights under the Fifth Amendment.

Accordingly, I deny the motion for judgment on the pleadings with respect to the defense of qualified immunity except with respect to the claim of hostile regulatory environment.

### d. *Sufficiency of Allegations With Respect To Individual Defendants*

I address the alleged actions of each defendant separately to determine whether the plaintiffs have pleaded sufficient facts to support a reasonable inference of illegal motive and otherwise state a cause of action.

#### *Volner*

■ The complaint alleges that Volner unduly delayed for six weeks to approve a newly purchased Cessna. There is no allegation that Volner even knew about the Capozzi–Felton sexual relationship other than the conclusory claim of conspiracy. Even if Volner delayed providing a deserved regulatory approval, I conclude that there are insufficient facts alleged to infer an improper motive based on Plaintiffs' protected conduct.

#### *Wickes*

The complaint alleges two acts of misconduct by Wickes, Felton's friend. First,

it alleges that Wickes, in an unsolicited comment in contravention of FAA policy, told Business Express, a GAS customer, not to fly with GAS. It also alleges that Wickes and Felton interrogated a captain for more than a day, thereby grounding the captain's plane overnight. Even if these two acts were sufficient to amount to a cognizable deprivation of property and unlawful motive, these acts both happened in January 1995. The claim against Wickes is time-barred.

#### *Hull*

■ In July 1995, Defendant Hull allegedly made some inappropriate remarks to GAS pilot Candace Quinn about GAS and encouraged her to leave employment there. However, there is no harm which is alleged to flow from those statements. Accordingly, the complaint fails to state a claim under the Due Process Clause of the Fifth Amendment.

#### *Clarke*

■ There are no allegations against Clarke in his individual capacity (as opposed to his supervisory capacity) and therefore the count is dismissed with respect to him.

#### *Lopez*

■ The complaint alleges that Lopez decided on April 2, 1996 to terminate Capozzi as an accident prevention counselor because of the difficulties with Felton and the possibility of litigation. That allegation is sufficient to state a timely retaliation claim.

### 4. *Count Three—Conspiracy*

■ The complaint alleges that all the defendants were engaged in a conspiracy to deprive Plaintiffs of civil rights in violation of 42 U.S.C. §§ 1983 and 1985(3). This count is dismissed because there is no

allegation of the requisite class-based invidious discriminatory animus. *Aulson v. Blanchard,* 83 F.3d 1, 4–6 (1st Cir.1996) (holding that plaintiff failed to state an actionable claim by not alleging discrimination against a distinctive and readily identifiable class of persons); *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) (holding that a plaintiff may recover only when the alleged conspiratorial conduct is motivated by "some racial or perhaps otherwise class-based invidiously discriminatory animus").

### 5. *Count Four—Supervisory Liability*

■■■■ Plaintiff alleges that Defendants Lopez and Gary Clarke are liable as supervisors for failing to train, discipline, and control the other individual defendants in the exercise of their duties as inspectors and regulators of air traffic and safety. Respondeat superior is not a viable theory of *Bivens* liability. *Ruiz Rivera v. Riley,* 209 F.3d 24, 28 (1st Cir.2000). Liability can be imposed only on the basis of the supervisors' own acts and omissions. There is supervisory liability only if (1) there is subordinate liability and (2) the supervisor's action or inaction is "affirmatively linked" to the constitutional violation caused by the subordinate. *Seekamp v. Michaud,* 109 F.3d 802, 808 (1st Cir.1997). That affirmative link must amount to "supervisory encouragement, condonation, or even acquiescence, or . . . gross negligence amounting to deliberate indifference." *Lipsett,* 864 F.2d 881, 902 (1st Cir.1988).

■■■■ A supervisor "may be liable for foreseeable consequences of [offending conduct by subordinates] if he would have known of it but for his deliberate indifference or willful blindness. To demonstrate deliberate indifference, a plaintiff must show (1) a grave risk of harm; (2) the defendant's actual or constructive knowledge of that risk; and (3) his failure to take easily available measures to address the risk. Deliberate indifference alone does not equate with supervisory liability; a suitor must also show causation." *Figueroa–Torres v. Toledo–Davila,* 232 F.3d 270, 279 (1st Cir.2000) (citations omitted).

■■■ Here, Plaintiff alleges that he complained to Clarke and Lopez that Felton was harassing him for terminating a sexual relationship; that they kept her as a POI of GAS and took no action to discipline her; and that their deliberate indifference caused additional harassment, financial harm, and emotional distress. While the claim of lack of training fails to allege the requisite affirmative link, the claim of lack of discipline survives at this early stage of the litigation.

### 6. *Count Five—Conspiracy Claim Against Lopez and Clarke*

Count Five states a common law conspiracy count against Lopez and Clarke. This is barred by the FTCA, 28 U.S.C. § 2679(b)(1).

### 7, 8. *Counts Six and Seven—Intentional and Negligent Infliction of Emotional Distress*

The complaint asserts claims of intentional and negligent infliction of emotional distress against all defendants. Although there is no separate count against the United States under the FTCA, the complaint states that the action was brought pursuant to 28 U.S.C. §§ 1346(b) and 2671, and that a timely administrative claim was filed. The claim of intentional infliction of emotional distress is barred by 28 U.S.C. § 2680(h). The claim of negligent infliction of emotional distress against the individual defendants is barred by 28 U.S.C. § 2679(b)(1).

The claim of negligent infliction of emotional distress against the government may

be barred depending on the essence of the claim. If Plaintiffs are alleging that the delays of final orders were negligently caused, it is well established that the exclusive jurisdiction given to the courts of appeals to review FAA actions also extends to lawsuits alleging FAA delay in issuing final orders. *See Sea Air Shuttle Corp. v. United States,* 112 F.3d 532, 535 (1st Cir.1997) (declining to consider whether an FTCA claim based on FAA inaction ever could be cognizable although thinking it unlikely). However, some FAA negligence may be actionable, such as negligent supervision of a subordinate charged with sexual harassment of a person under her regulatory jurisdiction. *Cf. Beins v. United States,* 695 F.2d 591, 597–98 (D.C.Cir. 1982) (holding that a FTCA claim seeking damages for denial of medical certificate may be brought against FAA). The motion to dismiss this claim of negligence against the government is *DENIED.*

## IV. ORDER

The Court dismisses Counts One, Three, Five, and Six against all defendants. The Court dismisses Count Seven against the individual defendants but not against the United States. The Court dismisses Count Two against James Volner, William Wickes, Stephen Hull, and Gary Clarke. Otherwise, the Court *DENIES* the motions to dismiss of Sharon Felton, Gary Clarke, Gary Lopez, and the United States. The Court dismisses the complaint in its entirety against James Volner, William Wickes, and Stephen Hull.