**Dennis MAYE, Plaintiff,**

v.

**Janet RENO, et al., Defendants.**

**Civil Action No. 00–0271 (JDB).**

United States District Court, District of Columbia.

Nov. 19, 2002.

---

Sheila Anne Lowery–Ferguson, Reuben Burton Collins, II, Washington, DC, for Plaintiff.

Diane Marie Sullivan, Stacy M. Ludwig, Washington, DC, for Defendants.

## MEMORANDUM OPINION

BATES, District Judge.

Plaintiff has filed this action against the Attorney General of the United States un-der Title VII, 42 U.S.C. § 2000(e), and against five individual defendants under 42 U.S.C. § 1985, claiming that he was dis-criminated against, and his constitutional rights were violated, as a result of a con-spiratorial vendetta to harass plaintiff and prevent the performance of his responsibil-ities as an agent of the Drug Enforcement Administration ("DEA"). Presently be-fore the Court is defendants' partial mo-tion to dismiss, which seeks dismissal of the claims against the five individual de-fendants.

On November 15, 2000, an order was entered dismissing three of the individual defendants. The case was transferred to the undersigned judge in January 2002. This Court now grants the motion to dis-miss the remaining two individual defen-dants.

## BACKGROUND

Plaintiff has been a special agent with the DEA since 1989, achieving the level of GS–12 in January 1997. Compl. ¶¶ 10–11. He alleges that beginning in early 1994 defendants William O'Malley and Daniel Bernstein, both Assistant United States Attorneys in the District of Columbia, initi-ated an effort to investigate and, thereaf-ter, harass plaintiff because he had alleg-edly provided perjured or false testimony in a Superior Court criminal prosecution. *Id.* ¶ 14. O'Malley, with Bernstein's assis-tance, allegedly forwarded information within the DEA and the Department of Justice ("DOJ") Public Integrity Section that resulted in investigations of plaintiff by the DOJ Office of Professional Respon-sibility and a grand jury. *See id.* ¶¶ 14–18. Plaintiff was never indicted, and an effort to have him held in contempt of court was dismissed. *Id.* ¶¶ 18–22. A subsequent review by DEA's Board of Professional Conduct and proposed removal of plaintiff

from federal service resulted, according to plaintiff's allegations, in his exoneration on all charges and specifications except for one specification of dereliction of duty, for which he received a one week suspension. *Id.* ¶¶ 23–24. Plaintiff's primary complaint is that notwithstanding this exoneration, a continuing effort was made to harass him, prevent his performance of duties as a DEA agent, and limit his future job prospects, primarily through continuing efforts by defendants O'Malley and Bernstein in communicating accusations against plaintiff to responsible officials in the United States Attorneys' Offices in Baltimore, Maryland, and the Eastern District of Virginia.

On the basis of these allegations, plaintiff asserts several employment discrimination claims against the Attorney General, in an official capacity only, as head of the Department of Justice, of which DEA is a component. Plaintiff contends that he has been prevented from performing his duties as a DEA special agent (Count I), denied a promotion to GS–13 (Count II), and barred from testifying in court cases, with an adverse impact on his career (Count III), all based on his race and retaliation against him. These claims are not the subject of the current motion.

Plaintiff also asserts in Count IV of his complaint, however, a claim under 42 U.S.C. § 1985 and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), against the five original individual defendants. He claims that notwithstanding DEA's exoneration of him, those defendants "engaged in a conspiracy, driven by racial animus, to deprive plaintiff of federally protected rights under the U.S. Constitution." Compl. ¶ 48. Following briefing on the motion to dismiss the five individual defendants, and the dismissal of three of those defendants, the claim against defendants O'Malley and

Bernstein in their individual capacities is now essentially that, after plaintiff's transfer to the Eastern District of Virginia in 1997, they communicated plaintiff's alleged misconduct (of which he was exonerated) to the United States Attorney's Office in that district in an attempt to get plaintiff barred from testifying in court cases there. *Id.* ¶ 55. Plaintiff concedes that only these activities relating to an alleged effort to undermine his career at DEA following his transfer to Virginia are actionable. *See* Plaintiff's Response in Opposition to Defendant's Supplemental Brief ("Pl.Response") at 2. As now focused, plaintiff claims that through the alleged actions of the two remaining individual defendants in seeking to prevent plaintiff from fulfilling an important part of his responsibilities as a DEA special agent (even after he had been exonerated of perjury or contempt charges), the plaintiff's constitutional rights have been violated by a denial of his liberty interest in his good name, professional reputation, and right to pursue a DEA career free of defendants' unlawful harassing conduct. *See* Pl. Response at 4–6.

### DISCUSSION

Several asserted bases for dismissal of the claims against defendants O'Malley and Bernstein remain relevant. Defendant O'Malley asserts that he has not been served properly. Both defendants assert that plaintiff has failed to state a claim against them individually because "special factors" counsel hesitation in implying a constitutional damages claim and plaintiff has not satisfied the requirements for a cause of action under 42 U.S.C. § 1985. Finally, defendants claim that they are entitled to either absolute or qualified immunity from plaintiff's claims.

■ Although on first blush these two defendants might seem to fall within the protection of absolute immunity by virtue

of their role as prosecutors, *see Kalina v. Fletcher,* 522 U.S. 118, 129, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997); *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993); *Burns v. Reed,* 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991); *Imbler v. Pachtman,* 424 U.S. 409, 420, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), it is not clear that they are in fact entitled to absolute immunity because they were not performing an advocacy function in connection with specific criminal prosecutions. As alleged by plaintiff, defendants O'Malley and Bernstein were communicating with Eastern District of Virginia prosecutors in an attempt generally to prevent plaintiff from testifying in any court case. Although efforts to control the presentation of witness testimony, and even to prevent a witness from testifying in a case, would seem to be within the prosecutor's function as an advocate, that is not necessarily true where the prosecutor has no specific function as an advocate in the relevant criminal prosecutions. That is the case here, where two District of Columbia Assistant United States Attorneys allegedly sought to affect witness decisions in cases outside their jurisdiction and in which they had no apparent official role.

For this reason, the Court will assess this case under the standard for qualified immunity. In that assessment, the Court will consider the "special factors" and section 1985 arguments raised on behalf of defendants O'Malley and Bernstein. The Court has some doubt whether plaintiff has stated a claim upon which relief can be granted in light of the special factors counseling hesitation in implying a constitutional cause of action in the face of Title VII and, arguably, Civil Service Reform Act remedies available to plaintiff, and given apparent deficiencies in plaintiff's allegations under section 1985. However, those issues are also relevant to the qualified immunity analysis, and can best be assessed in that context.

### 1. *Personal Service on Defendant O'Malley*

In a *Bivens* action against a federal official in his or her individual capacity, the defendant must be served pursuant to rules that apply to individual defendants. *See Simpkins v. District of Columbia Gov't,* 108 F.3d 366, 369 (D.C.Cir.1997); *Lawrence v. Acree,* 79 F.R.D. 669, 670 (D.D.C.1978); *Delgado v. Bureau of Prisons,* 727 F.Supp. 24 (D.D.C.1989). Defendant O'Malley has not been served in accordance with Fed.R.Civ.P. 4, as plaintiff effectively concedes by not contending to the contrary. Plaintiff instead argues that O'Malley has waived his objection to service by submitting a motion to dismiss raising other grounds; alternatively, plaintiff asks permission to attempt service on defendant O'Malley now (with the assistance of a discovery request to obtain a residence address).

It is plaintiff's responsibility to establish personal jurisdiction, and plaintiff must ensure that service is properly effectuated by remedying any known defect in service. *See Reuber v. United States,* 750 F.2d 1039, 1049, 1052 (D.C.Cir.1984); *Rochon v. Dawson,* 828 F.2d 1107, 1110 (5th Cir.1987); *Romandette v. Weetabix Co.,* 807 F.2d 309, 312 (2nd Cir.1986). Plaintiff has not done so with reasonable diligence. Moreover, unlike the sole case on which plaintiff relies, here defendant O'Malley has actively contested personal jurisdiction based on defective service, and therefore there has been no waiver of that defense.[1] The Court finds that service on defendant

---

1. In *Carlson v. Hyundai Motor,* 164 F.3d 1160 (8th Cir.1999), the defendant had appeared before the court but had failed to contest

personal jurisdiction, which led the court to

O'Malley is deficient, that the defense has not been waived, and that it is too late to give plaintiff an additional opportunity to serve defendant O'Malley at this point.

### 2. *Qualified Immunity*

 By now, it is well settled that federal officials such as the individual defendants in this case enjoy a qualified immunity from constitutional and statutory claims against them. *See, e.g., Saucier v. Katz,* 533 U.S. 194, 200–01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Cleavinger v. Saxner,* 474 U.S. 193, 206, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985); *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The basic standard for a qualified immunity analysis is explained in *Harlow:*

> government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate "clearly established" statutory or constitutional rights of which a reasonable person would have known.

457 U.S. at 818, 102 S.Ct. 2727. The defendant's subjective good faith is no longer relevant to the qualified immunity analysis. *Id.* at 815–18, 102 S.Ct. 2727.

In *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), a case of particular importance here, the Supreme Court further clarified "the proper analytical framework for determining whether a plaintiff's allegations are sufficient to overcome a defendant's defense of qualified immunity." *Id.* at 231, 111 S.Ct. 1789. Stressing the *threshold* nature of

the qualified immunity inquiry, the Court observed as follows:

> A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all.

*Id.* at 232, 111 S.Ct. 1789. It is only through a rigorous examination of that initial, purely legal question that the federal courts can expeditiously separate out and dismiss claims that cannot pass the test, thus ensuring fidelity to the purposes of immunity by sparing defendants the "unwarranted demands" of suit and discovery as well as unwarranted liability. *Id.* at 232–33, 111 S.Ct. 1789; *see also Mitchell,* 472 U.S. at 526, 105 S.Ct. 2806; *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727.

The Supreme Court recently elaborated further on this essential two-step qualified immunity inquiry. Again, the Court stressed the importance of lower federal courts considering "the requisites of a qualified immunity defense" in what the Court identified as the "proper sequence":

> the first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation is established, the question whether the right was clearly established must be considered. . . .

*Saucier v. Katz,* 533 U.S. at 200, 121 S.Ct. 2151; *accord, Lederman v. United States,* 291 F.3d 36, 46 (D.C.Cir.2002). This initial assessment of the "existence or nonexistence of a constitutional right" was necessary, in the Court's view, to enable development of the law so that courts can later assess whether a right is clearly established. *Id.* at 201, 121 S.Ct. 2151.[2] The

---

determine that the defense had been waived. *Id.* at 1163.

**2.** The Court explained further in *Saucier:*

Our instruction to the district courts and courts of appeal to concentrate at the outset on the definition of the constitutional right and to determine whether, on the facts al-

*Saucier* Court identified this threshold inquiry precisely: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201, 121 S.Ct. 2151 (citing *Siegert v. Gilley,* 500 U.S. at 232, 111 S.Ct. 1789).

■ We turn then to that fundamental threshold inquiry, focusing first on the claim asserted by plaintiff. As refined by plaintiff, this claim against individual defendants O'Malley and Bernstein relates solely to their alleged communications in 1997 and 1998 with the Office of the United States Attorney for the Eastern District of Virginia, purportedly in order to preclude plaintiff from testifying in court cases there. *See* Compl. ¶ 55; Pl. Response at 2. According to plaintiff's most recent articulation, this alleged conduct was "an effort to undermine [plaintiff's] status and career in the DEA" and "to undermine his employment wherever he might be transferred within the DEA." Pl. Response at 2. Plaintiff contends that this was a personal vendetta against him (based on racial animus) because efforts to have him indicted and cited for contempt had failed. *Id.* at 3.

These efforts, according to plaintiff, implicated his constitutionally protected liberty interests because the accusations were "so damaging as to make it difficult, if not impossible to escape the stigma of those charges." *Id.* Plaintiff's cause of action focuses on this alleged deprivation of a liberty interest in his good name and reputation, in combination with "damage to his employment status that imposes a stigma that forecloses employment opportunities." *Id.* at 3–4. Plaintiff thus complains of defendants' conduct that allegedly sought to prevent him "from fulfilling an essential part of his employment as a DEA

agent" even after he had been exonerated of the perjury and contempt charges. *Id.* at 4. Hence, plaintiff describes his claim as follows:

> Plaintiff's clearly established rights are his liberty interest in his good name and professional reputation, and his right to be able to pursue his chosen profession with the DEA free from the defendants' unlawfully motivated attempts to undermine his DEA career.
>
> . . .
>
> [P]laintiff's liberty interest in his good name, professional reputation and right to pursue his DEA career free of defendants' continuing harassment constitute protected liberty interests.

*Id.* at 5–6.

Applying the analytical framework commanded by the Supreme Court, the initial, and ultimately dispositive, inquiry is whether the facts alleged by plaintiff show that the individual defendants' conduct violated a constitutional right. *See Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. The holding in *Siegert* controls this case, and requires the conclusion that plaintiff has not alleged conduct that violates his constitutional rights.

In *Siegert,* the plaintiff was a psychologist employed at St. Elizabeths Hospital, then a federal facility. He was notified of a proposed removal based on his lack of dependability, failure to comply with supervisory orders, and repeated absences without leave. He resigned from the hospital to avoid a termination that could damage his reputation. *See* 500 U.S. at 227–28, 111 S.Ct. 1789.

Siegert then began work at a United States Army hospital in West Germany. His need to be "credentialed" led to his

---

leged, a constitutional violation could be found is important. As we have said, the procedure permits courts in appropriate

cases to elaborate the constitutional right with greater degrees of specificity.
*Id.* at 207, 121 S.Ct. 2151.

submission of a signed form asking St. Elizabeths Hospital to provide his new supervisor with information on his past job performance. The request went to Gilley, who was plaintiff's supervisor at St. Elizabeths. Gilley then notified the Army that he could not recommend Siegert as a psychologist because he was inept, unethical, and "the least trustworthy individual" Gilley had supervised. Siegert was then denied credentials, and turned down for a position with another Army hospital in West Germany. He was given limited provisional credentials, but an appeal to obtain full credentials was denied and he was terminated. *See id.* at 228–29, 111 S.Ct. 1789.

Siegert filed a *Bivens* damages action against Gilley alleging that malicious publication of defamatory statements known to be untrue had infringed his liberty interests. The District Court denied Gilley's summary judgment motion raising qualified immunity, and ordered limited discovery; a divided panel of the Court of Appeals reversed and ordered dismissal through application of a "heightened pleading standard."

The Supreme Court concluded that neither the sufficiency of allegations of malice nor whether the constitutional right asserted by plaintiff was clearly established need be decided. *Id.* at 232, 111 S.Ct. 1789. Instead, the Court focused on the threshold, purely legal "determination of whether the plaintiff has asserted a violation of a constitutional right at all," and held that plaintiff failed to allege the violation of a constitutional right. *Id.* at 231–32, 111 S.Ct. 1789.

As in the instant case, the analysis in *Siegert* involved a review of the decision in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), which held that "injury to reputation by itself was not a 'liberty' interest protected under the Fourteenth Amendment." *Siegert,* 500 U.S. at 233, 111 S.Ct. 1789 (citing *Paul,* 424 U.S. at 708–09, 96 S.Ct. 1155). The Court noted that defamation, absent discharge or failure to rehire, is not a constitutional deprivation, and that Siegert had voluntarily resigned from his position at St. Elizabeths. The Court observed:

The alleged defamation was not uttered incident to the termination of Siegert's employment by the hospital, since he voluntarily resigned from his position at the hospital, and the letter was written several weeks later. The statements contained in the letter would undoubtedly damage the reputation of one in his position, and impair his future employment prospects. But the plaintiff in *Paul v. Davis* similarly alleged serious impairment of his future employment opportunities as well as other harm. Most defamation plaintiffs attempt to show some sort of special damage and out-of-pocket loss which flows from the injury to their reputation. But so long as such damage flows from the injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable in a *Bivens* action.

*Siegert,* 500 U.S. at 234, 111 S.Ct. 1789. The Court concluded that neither malice nor the "stigma plus" test of *Paul v. Davis* was determinative: "Our decision in *Paul v. Davis* did not turn, however, on the state of mind of the defendant, but on the lack of any constitutional protection for the interest in reputation." *Id.*

Like Siegert, plaintiff does not claim a discharge from employment or failure to hire—as alleged in his Complaint, plaintiff continues to be employed at DEA—and his claim focuses specifically on alleged damage to his "good name," his "professional reputation," and his right to pursue his career. That asserted liberty interest claim cannot be distinguished from the

alleged claim in *Siegert,* which the Supreme Court held failed "to establish the violation of any constitutional right at all." *Id.* at 233, 111 S.Ct. 1789. Hence, employing the analytical framework as directed by the Supreme Court in *Saucier, Anderson,* and *Siegert,* this Court concludes that individual defendants O'Malley and Bernstein are entitled to qualified immunity because plaintiff's complaint against them does not sufficiently allege a violation of any constitutional right.

■ The failure of plaintiff to state a cognizable claim of the violation of a constitutional right—*i.e.,* the deprivation of a liberty interest—is further supported by a review of two corollary issues. First, the availability of a Title VII remedy against the agency, as well as the existence of a comprehensive remedial scheme under the Civil Service Reform Act (CSRA), constitute the type of "special factors" cautioning courts against implying a *Bivens* remedy in this area. *See Bush v. Lucas,* 462 U.S. 367, 375–76, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983); *Spagnola v. Mathis,* 859 F.2d 223, 228–29 (D.C.Cir.1988); *see also Brown v. GSA,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). Plaintiff's primary response to defendants' special factors argument is that the comprehensive remedial schemes under Title VII and the CSRA do not extend to provide plaintiff with relief against these individual defendants. *See, e.g.,* Pl. Response at 4–5. But the Supreme Court has made it clear beyond peradventure that the absence of statutory relief under existing laws is not a basis to imply a damages remedy against federal officials allegedly responsible for a constitutional violation. *See Correctional Services Corp. v. Malesko,* 534 U.S. 61, 122 S.Ct. 515, 520, 151 L.Ed.2d 456 (2001); *Schweiker v. Chilicky,* 487 U.S. 412, 421–22, 425, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988); *United States v. Stanley,* 483 U.S. 669, 683, 107 S.Ct. 3054, 97 L.Ed.2d 550

(1987); *Bush v. Lucas,* 462 U.S. at 388, 103 S.Ct. 2404.

So, too, plaintiff has failed to allege the requisite elements of a claim under any section of 42 U.S.C. § 1985. His claim that he has been prevented from discharging his duties as a DEA agent is precisely his Title VII claim, and hence the comprehensive remedial scheme under Title VII precludes a section 1985 claim under a special factors analysis. Moreover, he has failed sufficiently to allege either an actionable conspiracy or a specific proceeding in federal court in which he was allegedly prevented from appearing as a witness, each of which is necessary for a claim under section 1985(2). Finally, plaintiff has provided insufficient allegations that he was treated differently from other similarly situated individuals, and in any event, the Supreme Court has observed that one cannot premise a section 1985(3) claim on a Title VII violation, as plaintiff plainly attempts to do here. *See Great American Federal Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 378, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979).

### *CONCLUSION*

For the reasons explained above, plaintiff's claims against individual defendants O'Malley and Bernstein must be dismissed. To begin with, he has failed properly to serve defendant O'Malley personally in accordance with Rule 4, as he must do in an action against a federal official in his individual capacity. More fundamentally, the individual defendants are entitled to qualified immunity because plaintiff has failed, in light of *Siegert v. Gilley* and other Supreme Court cases, to allege facts that establish a violation of any constitutional right, even taking his allegations in the light most favorable to him.

A separate order dismissing the claims against individual defendants O'Malley and Bernstein will be issued.

### ORDER

Upon consideration of the motion to dismiss filed by individual defendants O'Malley and Bernstein, the memoranda and supporting materials of the parties, and the entire record herein, it is this __ day of November, 2002, hereby

ORDERED that defendants' motion is GRANTED and plaintiff's claims against individual defendants O'Malley and Bernstein are DISMISSED with prejudice in their entirety.