**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| JOE WILSON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-490 (RMC) |
| | ) | |
| U.S. DEPARTMENT OF | ) | |
| TRANSPORTATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Joe Wilson, proceeding *pro se*, brought a fourteen count Complaint against the

Department of Transportation and nine individuals. Mr. Wilson has stated claims against the

Secretary of Transportation as follows: (1) a claim for race and age discrimination based on a

December 2007 denial of promotion and (2) a claim for retaliation based on his manager's

decision to charge him with leave without pay from August 31 to September 3, 2009.[1] As

explained below, all other defendants and all other claims will be dismissed.

**I. FACTS**

Mr. Wilson brought suit against the Department of Transportation and the

following nine individuals employed at various offices within the Federal Highway

Administration ("FHWA"): Morten Sorensen, Director of Financial Services at the Office of the

Chief Financial Officer ("OCFO"); Margo Sheridan, Deputy Chief Financial Officer at OCFO;

Albert "Tom" Park, former Chief Financial Officer at OCFO; Elissa Konove, current Chief

Financial Officer at OCFO; Patricia Toole, FHWA Human Resources Director; Allen Masuda,

---

[1] The Court asserts no opinion whether these claims can later survive summary judgment.

FHWA Office of Civil Rights Associate Administrator; Jeff Paniati, FHWA Executive Director;

Patricia Prosperi, FHWA Administrator of Administration; and Marylou Nicholson,

Management Assistant at FHWA.

The Complaint is replete with vague allegations. For example, the Complaint

alleges:

> 48. DEFAMATION. This complaint and all the suffering that lead up to it could have been averted long ago. . . . As a solution, Plaintiff proposed diversity, tolerance, ethics, and leadership training for Morten Sorensen and an apology for this inexplicable behavior. What Plaintiff received was a written reprimand.
>
> . . .
>
> 50. HOSTILE WORK ENVIRONMENT. A hostile work environment is not a single action. It may begin as a single action and from there is becomes a pattern of events. Here is a brief roll of what makes up this hostile work environment:
>
> The intimidation of the staff.
> The extraordinary closeness of management [ ] working on this situation with no positive results, only wasted taxpayer money and more hostility.
> The exorbitant number of denied promotions from personal motives and grudges.
> The proactive involvement of OCC[2] in non-EEO cases that provides heart and confidence to management and intimidation to employees.
> The excessive number of near violent eruptions in OCFO.
> Lou Nicholson spying and intimidating.
> The Competitive Sourcing/BPR[3] initiative that targeted only certain individuals — over 50, handicapped, minorities.
> Inexplicable Freedom of Information Act (FOIA) activity.

Compl. [Dkt. # 1] ¶ 48 & 50.

---

[2] "OCC" is the FHWA Office of Chief Counsel.

[3] The Complaint does not define the "Competitive Sourcing/BPR initiative."

Despite such vague allegations, it can be discerned from the Complaint that Mr. Wilson has been employed as an accountant with the FHWA since 2003. He started at the grade level GS-9, was promoted to GS-11 in 2005 and was promoted to GS-12 in 2006. He alleges that he is entitled to promotion on a non-competitive basis and that despite being recommended for, and eligible for, promotion since 2006, Defendants have failed to promote him to grade GS-13. Compl. ¶ 5. He claims that in December of 2007, he was required to take a "last minute test with no notice covering matters that have never been within [his] job responsibilities." *Id*. ¶ 53.[4]

On December 18, 2007, Mr. Wilson contacted an EEO counselor and claimed that he was not promoted due to race and age discrimination; Mr. Wilson is a an African-American and he was 52 years old in December of 2007. Defs.' Mot. to Dismiss [Dkt. # 6], Ex. 8 (EEO Counselor's Report); *id*, Ex. 11 (EEO Investigation Report). On January 22, 2008, FHWA sent Mr. Wilson a notice of his right to file a discrimination complaint. *Id*., Ex. 9 (Notice). On January 30, 2008, Mr. Wilson filed a formal complaint, and the Department of Transportation's Office of Civil Rights ("DOT OCR") accepted Mr. Wilson's claim for investigation. *Id*., Ex. 10 (Letter from DOT OCR).

On August 29, 2009, Mr. Wilson again contacted an EEO counselor to file a complaint. He alleged that the agency charged him with leave without pay from August 31, 2009 to September 3, 2009, and that this was done in retaliation for his prior complaint of discrimination. He also alleged a hostile work environment, as a co-worker (Deera Herron) told

---

[4] Despite notations in the Complaint that pre-2008 discrimination claims were included in a separate case, Mr. Wilson later sought to include such allegations in this case. Defendants interpreted the Complaint to actually include pre-2008 discrimination claims, and the Court has deemed the Complaint to include such allegations. *See* Minute Order filed Dec. 27, 2010.

Mr. Wilson that she had overheard management make derogatory remarks about him. *Id*., Ex. 19

(EEO Counselor's Report). On October 2, 2009, Mr. Wilson filed a formal charge with the DOT

OCR. *Id*., Ex. 23 (Complaint). DOT OCR dismissed the charge for failure to state a claim,

noting that the allegations did not demonstrate severe or pervasive conduct that actually affected

any term or condition of employment. *Id*.

On March 24, 2010, Mr. Wilson filed this lawsuit. Then, on April 6, 2010, an

EEOC Administrative Judge dismissed his 2008 charge of failure to promote due to race and age

discrimination for the reason that the 2008 charge was pending in this suit. *Id*., Ex. 29 (EEOC

Dismissal Notice). The instant Complaint alleges fourteen Counts:

> Count I – Violation of EEOC Regulations at 29 C.F.R.
> §§ 1614.103, .106(a), & .107(a)(1);
>
> Count II – Conspiracy to violate civil rights under 42 U.S.C.
> § 1985;
>
> Count III – Negligent failure to prevent conspiracy to violate civil
> rights under 42 U.S.C. § 1986;
>
> Count IV – Violation of Title VII of the Civil Rights Act, 42
> U.S.C. §§ 2000e -- 2000h-6 based on the pre-2008 failure to
> promote and hostile environment;
>
> Count V – Violation of Title VII of the Civil Rights Act, 42 U.S.C.
> §§ 2000e -- 2000h-6 based on retaliation and hostile environment;
>
> Count VI – Violation of Title VII of the Civil Rights Act of 1991,
> 42 U.S.C. § 1981a;
>
> Count VII – Violation of the Age Discrimination in Employment
> Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*.;
>
> Count VIII – Violation of the Civil Service Reform Act of 1978, 5
> U.S.C. § 2302;
>
> Count IX – Breach of duty of good faith and fair dealing;

Count X – Civil Conspiracy;

Count XI – Breach of Contract;

Count XII – Intentional and Negligent Infliction of Emotional
Distress;

Count XIII – Defamation; and

Count XIV – Violation of the First, Fifth, Ninth, and Fourteenth
Amendments to the U.S. Constitution.

Defendants move to dismiss all Counts other than Counts IV, V, and VII.

## II. STANDARD OF REVIEW

Defendants seek partial dismissal of the Complaint based on failure to state a

claim under Federal Rule of Civil Procedure 12(b)(6) and lack of jurisdiction under Rule

12(b)(1).[5]

### A. Failure to State a Claim

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated

a claim. A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is

and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(internal citations omitted). Although a complaint does not need detailed factual allegations, a

plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than

---

[5] In the alternative, Defendants move for a more definite statement under Federal Rule of Civil Procedure 8(a). Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While some of the Complaint is garbled and confused, it appears to allege claims of race and age discrimination and retaliation and there is no need for Mr. Wilson to file a more definite statement. Defendants also move in the alternative for partial summary judgment; however, because the Court grants Defendants' motion to dismiss, the request for summary judgment will be denied as moot.

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The facts alleged "must be enough to raise a right to relief above the speculative level." *Id.* "[A] complaint needs *some* information about the circumstances giving rise to the claims." *Aktieselskabet Af 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008) (emphasis in original). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570.

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

**B. Lack of Jurisdiction**

When reviewing a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a court must review the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged. *Barr v. Clinton*, 370 F. 3d

1196, 1199 (D.C. Cir. 2004). To determine whether it has jurisdiction over the claim, a court may consider materials outside the pleadings. *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005). No action of the parties can confer subject matter jurisdiction on a federal court because subject matter jurisdiction is required by Article III of the U.S. Constitution and by federal statute. *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003). The party claiming subject matter jurisdiction bears the burden of demonstrating that such jurisdiction exists. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).

### III. ANALYSIS

#### A. Count I, Violation of EEOC Regulations

Mr. Wilson alleges that Defendants violated EEOC Regulations 29 C.F.R. §§ 1614.103, .106(a), and .107(a)(1), when DOT OCR dismissed his hostile work environment and retaliation claims for failure to state a claim. Section 1614.103 provides that discrimination and retaliation claims shall be processed in accordance with regulations. Section 1614.106(a) provides that a complaint must be filed with the agency that allegedly discriminated against the complainant. Section 1614.107(a)(1) provides that the agency shall dismiss any complaint that fails to state a claim. Mr. Wilson seems to be alleging that Defendants somehow mishandled his Title VII complaint. Title VII creates a cause of action for discrimination claims but it "does not create an independent cause of action for the mishandling of an employee's discrimination complaints." *Young v. Sullivan*, 733 F. Supp. 131, 132 (D.D.C. 1990). Thus, Count I does not state a viable legal claim and it will be dismissed.

**B. Counts II, III, and XIV, Conspiracy to Violate Civil Rights and Constitutional Claims**

Mr. Wilson asserts a *Bivens*-type[6] claim for deprivation of his rights under 42 U.S.C. § 1985(3) (conspiracy to violate civil rights) and § 1986 (negligent failure to prevent conspiracy to violate civil rights) as well as under the First, Fifth, Ninth, and Fourteenth Amendments. *See* Compl. Counts II, III, XIV. However, a *Bivens* remedy is only appropriate where the petitioner has no other means of obtaining redress and there are no other "factors counseling hesitation." *Osahar v. Postmaster General*, No. 06-15613, 2008 WL 123959, *10 (11th Cir. Jan. 15, 2008); *accord Bush v. Lucas*, 462 U.S. 367, 373 (1983) (*Bivens* remedies are not appropriate when Congress has precluded judicially-created remedies by itself creating a remedy or "by declaring that existing statutes provide the exclusive mode of redress"). Title VII provides the exclusive and comprehensive remedy for discrimination. *Osahar*, 2008 WL 123959 at *10. "[F]ederal employees may not bring suit under the Constitution for employment discrimination that is actionable under Title VII." *Ethnic Emps. of Library of Congress v. Boorstin*, 751 F.2d 1405, 1415 (D.C. Cir. 1985). Similarly, a claim under § 1985 is not available when a plaintiff asserts employment discrimination under Title VII. *May v. Reno*, 231 F. Supp. 2d 332, 339 (D.D.C. 2002). A § 1986 claim is derivative of a § 1985 claim. Thus, when a plaintiff has not stated a claim under § 1985, there is no basis for relief under § 1986. *Herbin v. Hoeffel*, No. 99-7244, 2000 WL 621304, *1 (D.C. Cir. Apr. 6, 2000). The gravamen of Mr. Wilson's Complaint is discrimination. Because Congress has created remedies for

---

[6] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), established that an individual may bring a suit for damages against a federal officer, in his individual capacity, for violation of a constitutional right.

discrimination under Title VII and the ADEA, no *Bivens*-type remedy is available here.

Accordingly, Counts II, III, and XIV will be dismissed for failure to state a claim.

### C.  Count VI, Violation of Title VII of the Civil Rights Act of 1991

Mr. Wilson alleges a violation of Title VII of the Civil Rights Act of 1991, 42

U.S.C. § 1981a, in Count VI of the Complaint.  Section 1981a addresses remedies and

procedures in Title VII actions.  It provides for trial by jury and compensatory damages.  It does

not provide any independent cause of action for which suit can be brought.  Thus, Count VI will

be dismissed under Rule 12(b)(6).

### D.  Count VIII, Violation of the Civil Service Reform Act of 1978

Mr. Wilson alleges that Defendants violated his rights under the Civil Service

Reform Act of 1978 ("CSRA"), 5 U.S.C. § 2302.  The CSRA provides a grievance process and

remedies to an employee who believes that he is the victim of a prohibited personnel practice.

Exhaustion of administrative remedies, via the Office of Special Counsel and the Merit Service

Protection Board, is required to maintain an action under the CSRA.  *Weaver v. U.S. Information

Agency*, 87 F.3d 1429, 1433 (D.C. Cir. 1996). When an employee believes he is the victim of a

prohibited practice that was motivated by discrimination in violation of Title VII, the employee

can file a "mixed case," *i.e.* one alleging violation of both CSRA and Title VII.  An employee

can file a mixed case with either the agency's EEO office or the Merit Service Protection Board,

but not both.  *Butler v. West*, 164 F.3d 634, 638 (D.C. Cir. 1999).  Whichever route he chooses, a

plaintiff must first exhaust his claim in the chosen forum before filing a civil action in federal

district court.  *Williams v. Munoz*, 106 F. Supp. 2d 40, 43 (D.D.C. 2000).

Mr. Wilson chose to pursue his discrimination claim via the EEO process and did

not bring any claims through the Merit Service Protection Board or the mixed case route. He did not allege any claims under the CSRA in his EEO complaints. Because Mr. Wilson has not exhausted any claim under the CSRA, this Court lacks jurisdiction over such a claim. Count VIII will be dismissed.

### E. Count IX, Breach of Duty of Good Faith and Fair Dealing and Count XI, Breach of Contract

Mr. Wilson contends that Defendants breached an alleged contract whereby he would be promoted on a non-competitive career ladder and that they breached their duty of good faith and fair dealing, a duty implied in every contract. *See Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1087 (D.C. 2008) (damages for breach of the implied covenant of good faith may be recovered as part of a contract action). "The party asserting the existence of an enforceable contract . . . bears the burden of proof on the issue of contract formation." *Virtual Defense and Development Intern., Inc. v. Republic of Moldova*, 133 F. Supp. 2d 9, 17 (D.D.C. 2001). The essential elements of a contract are "competent parties, lawful subject matter, legal consideration, mutuality of assent and mutuality of obligation." *Henke v. U.S. Dep't of Commerce*, 83 F.3d 1445, 1450 (D.C. Cir. 1996); *see also Segar v. Mukasey*, 508 F.3d 16, 21 (D.C. Cir. 2007) (meeting of the minds required).

Mr. Wilson has not pointed to any contract between him and the Department of Transportation. Moreover, even if Mr. Wilson had stated a claim for breach of contract, it appears that he would be seeking more than $10,000 against the federal government. When a plaintiff fails to claim a specific amount, a court may infer the amount claimed to determine whether that amount meets jurisdictional requirements. *Powell v. Castaneda*, 390 F. Supp. 2d 1, 7 (D.D.C. 2005). Mr. Wilson seeks front pay and back pay for the failure to promote in

December 2007. This amount easily exceeds $10,000. The Tucker Act, 28 U.S.C. § 1491(a)(1), gives the U.S. Court of Federal Claims exclusive jurisdiction over breach of contract claims against the federal government in excess of $10,000. *See Ciralsky v. CIA*, 689 F. Supp. 2d 141, 152 (D.D.C. 2010). Mr. Wilson has failed to state a claim for breach of contract and breach of the covenant of good faith, and if he had stated such a claim, this Court would lack jurisdiction over such a claim. Therefore, Counts IX and XI must be dismissed.

### F. Count X, Civil Conspiracy; Count XII, Intentional and Negligent Infliction of Emotional Distress; and Count XIII, Defamation

Mr. Wilson's claims for civil conspiracy, intentional and negligent infliction of emotional distress, and defamation are barred by sovereign immunity. It is "axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *see also Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994) (absent a specific waiver, the United States government is protected from suit by the doctrine of sovereign immunity). In addition, sovereign immunity bars suits for money damages against public officials sued in their official capacities absent a specific waiver by the government. *Clark v. Library of Congress*, 750 F.2d 89, 103 (D.C. Cir. 1984).

The exclusive remedy for torts committed by Government employees in the scope of their employment is a suit against the Government itself under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680. In other words, the FTCA works as a limited waiver of sovereign immunity, *Sloan v. Dep't of Housing and Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001), and claims for negligent and intentional infliction of emotional distress against

a federal agency can only be pursued via the FTCA. *Totten v. Norton*, 421 F. Supp. 2d 115, 122 (D.D.C. 2006). However, the FTCA does not waive immunity for claims of defamation. *Sottile v. U.S.*, 608 F. Supp. 1040, 1042 (D.D.C. 1985) (citing 28 U.S.C. § 2680(h)). Further, the FTCA bars claimants from bringing suit until they have exhausted their administrative remedies, which includes the requirement that claimants first bring their claims to the agency, and that the claims have been denied by that agency. *McNeil v. United States*, 508 U.S. 106, 111, 113 (1993); *see also* 28 U.S.C. § 2675(a). The exhaustion requirement is jurisdictional. *GAF Corp. v. United States*, 818 F.2d 901, 904 (D.C. Cir. 1987).

Mr. Wilson's defamation claim is barred by sovereign immunity, and no waiver for such a claim is included in the FTCA. Also, the Complaint does not contain any allegations pursuant to the FTCA and it does not aver that Mr. Wilson exhausted administrative remedies as to these claims. Further, with regard to the civil conspiracy claim, such a claim under D.C. law is not an independent tort, but only a means for establishing vicarious liability for an underlying tort. *Nadar v. Nat'l Democratic Party*, 567 F.3d 692, 697 (D.C. Cir. 2009). Because the underlying tort claims fail, so too must the civil conspiracy claim.[7] Therefore, the claims of civil conspiracy (Count X), intentional and negligent infliction of emotional distress (Count XII), and defamation (Count XIII) will be dismissed for lack of jurisdiction.

---

[7] In addition, the U.S. Attorney General has certified that the individual Defendants were acting within the scope of their duties. Defs.' Mot. to Dismiss, Ex. 2 (Certification). Where such a certification has been made, federal defendants are entitled to immunity. *U.S. v. Smith*, 499 U.S. 160, 161– 62 (1991). As a result, Mr. Wilson cannot proceed against the individual Defendants in their personal capacities.

### G. Count IV and V, Violation of Title VII and Count VII, Violation of the ADEA

Mr. Wilson alleges that Defendants violated Title VII based on the pre-2008 failure to promote and hostile environment (Count IV) and based on retaliation and hostile environment (Count V) and that Defendants violated the ADEA based on the pre-2008 failure to promote (Count VII). Because the Complaint is long and vague, it may be that Mr. Wilson intends to assert other discrimination claims as well. As to those claims, however, he has not exhausted administrative remedies and thus has not stated a claim. *See Williams-Jones v. Lahood*, 656 F. Supp. 2d 63, 66 (D.D.C. 2009) (failure to exhaust under Title VII should be treated as a failure to state a claim rather than as a jurisdictional deficiency). A federal employee must first proceed before the agency accused of discrimination before the employee may institute a civil action pursuant to Title VII in federal court. 42 U.S.C. § 2000e-16(c); *see also Bayer v. U.S. Dep't of Treasury*, 956 F.2d 330, 332 (D.C. Cir. 1992).

The hostile work environment claims will be dismissed for failure to state a claim. Title VII prohibits an employer from discriminating on the basis of race, color, religion, sex, or national origin in hiring decisions, in compensation, terms and conditions of employment, and in classifying employees in a way that would adversely affect their status as employees. 42 U.S.C. § 2000e-16. The Supreme Court has determined that the language of Title VII is not limited to economic or tangible discrimination. "The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)) (internal quotation marks omitted).

Therefore, Title VII is violated when a plaintiff demonstrates that the "workplace is permeated with discriminatory intimidation, ridicule, and insult" and that this behavior is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 21.

In determining whether a hostile work environment claim is substantiated, a court must look at all the circumstances of the plaintiff's employment, specifically focusing on such factors as the frequency of the discriminatory conduct, its severity, whether it was threatening and humiliating or was merely offensive, and whether it unreasonably interfered with the employee's work performance. *Id.* at 23. The conduct must be sufficiently extreme to constitute an alteration in the conditions of employment, so that Title VII does not evolve into a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Consequently, "'mere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21 (quoting *Meritor*, 477 U.S. at 91). Further, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 778. A plaintiff must demonstrate that the alleged events leading to the hostile work environment were connected, since "discrete acts constituting discrimination or retaliation claims . . . are different in kind from a hostile work environment claim" that must be based on severe or pervasive "discriminatory intimidation or insult." *Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003) (citing *AMTRAK v. Morgan*, 536 U.S. 101, 115–16 (2002)). For example, in *George v. Leavitt*, 407 F.3d 405 (D.C. Cir. 2005), the D.C. Circuit held that statements by three employees over a six-month period telling a

plaintiff to "go back where she came from," separate acts of yelling and hostility, and allegations that the plaintiff was not given the type of work she deserved, were isolated instances that did not rise to the level of severity necessary to find a hostile work environment. *Id*. at 416–17.

Here, Mr. Wilson makes only vague allegations relating to his claim of discrimination based on a hostile work environment:

> 50. HOSTILE WORK ENVIRONMENT. A hostile work environment is not a single action. It may begin as a single action and from there is becomes a pattern of events. Here is a brief roll of what makes up this hostile work environment:
>
> The intimidation of the staff.
> The extraordinary closeness of management [ ] working on this situation with no positive results, only wasted taxpayer money and more hostility.
> The exorbitant number of denied promotions from personal motives and grudges.
> The proactive involvement of OCC in non-EEO cases that provides heart and confidence to management and intimidation to employees.
> The excessive number of near violent eruptions in OCFO.
> Lou Nicholson spying and intimidating.
> The Competitive Sourcing/BPR initiative that targeted only certain individuals — over 50, handicapped, minorities.
> Inexplicable Freedom of Information Act (FOIA) activity.

Compl. [Dkt. # 1] ¶ 50. He also alleges that "Plaintiff became aware of the hostile work environment . . . in March 2003. At that time, fiercely contested outsourcing was underway with predominately African-Americans and all other minorities targeted, resulting in numerous complaints reported and/or claims filed, and Sandy Weisman, the senior executive in charge of this office departing abruptly when one such filed EEO case was settled out of court." *Id*. ¶ 21. He notes that "Defendant Sorensen began harassing his staff by taking roll call attendance each morning, abusing his employees, micro-managing, and recruiting junior managers to join in on

his harassment." *Id*. ¶ 36. Finally, he avers that "Defendants continue to allow the mistreatment of individuals from a protected group by a manager with a history of 'inappropriate racial and sexual behavior.'" *Id*. ¶ 73. These allegations are insufficient to state a claim for hostile work environment. There are no allegations of severe or pervasive conduct that amount to a discriminatory change in the terms and conditions of employment. *Faragher*, 524 U.S. at 778. Title VII is not a civility code. *Id*. Accordingly, the hostile environment claims will be dismissed.

At this juncture, Defendants do not seek to dismiss Mr. Wilson's claims for race and age discrimination based on the December 2007 denial of promotion (Counts IV and VII) and for retaliation based on the decision to charge him with leave without pay from August 31 to September 3, 2009 (Count V). Those claims remain pending.

### H. Proper Defendant

Title VII and the ADEA do not impose individual liability; the only proper defendant in suits brought under these statutes is the head of the department or agency being sued. *See* 42 U.S.C. § 2000e-16c (Title VII); *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 81 (D.D.C. 2009) (Title VII); *Amariglio v. Nat'l R.R. Passenger Corp*., 941 F. Supp. 173, 178 (D.D.C. 1996) (ADEA). The proper defendant for Mr. Wilson's Title VII claim is the Secretary of Transportation, Ray LaHood. Thus, Mr. LaHood will be substituted as the sole defendant. *See* Fed. R. Civ. P. 25(d)(1). The Title VII and ADEA claims are dismissed against all other Defendants.

### IV. CONCLUSION

Accordingly, all claims will be dismissed except the following: (1) a claim for

race and age discrimination based on a December 2007 denial of promotion (Counts IV and VII) and (2) a claim for retaliation based on the decision to charge Mr. Wilson with leave without pay from August 31 to September 3, 2009 (Count V). The Secretary of Transportation, Ray LaHood, is substituted the Department of Transportation. All other Defendants will be dismissed.[8] A memorializing Order accompanies this Memorandum Opinion.


Date: January 4, 2011                                                    /s/
                                                        ROSEMARY M. COLLYER
                                                        United States District Judge

---

[8] Thus, Mr. LaHood will be the sole Defendant in this case.